STATE OF NORTH CAROLINA v. ABRIM LEONARD ACKLIN

No. 778A85

(Filed 12 August 1986)

**Criminal Law § 73— SBI lab reports—exclusion erroneous**

> The trial judge erred in a prosecution for kidnapping and rape by excluding lab reports of hair and blood analysis which showed that a pubic hair and semen retrieved from the victim and her underwear had not originated with defendant. The reports were admissible under N.C.G.S. § 8C-1, Rule 803(8)(c) in that both reports were prepared by a public office or agency pursuant to authority granted by law; both contained factual findings; both were to be introduced against the State in a criminal case; both contained assurances of trustworthiness in the impartiality of SBI chemists and the right to examine and cross-examine witnesses; and there was prejudice from the exclusion even though the SBI agents were allowed to testify because the exculpatory nature of their conclusions was largely obscured by the judge's refusal to allow the reports into evidence, both agents were cross-examined by the State in such a way as to draw attention away from their conclusions, and the jury during deliberations requested all exhibits and asked the judge whether evidence by a witness had more weight than physical evidence. N.C.G.S. § 15A-1443(a) (1983).

DEFENDANT appeals from judgment entered by *Wright, J.,* at the 19 August 1985 Criminal Session of Superior Court, FRANK-

LIN County, imposing concurrent sentences of life imprisonment and twelve years upon jury verdicts of guilty of first-degree rape and first-degree kidnapping. Defendant's motion to bypass the Court of Appeals on his appeal of the twelve-year sentence was allowed by this Court 9 January 1986. Heard in the Supreme Court 15 May 1986.

*Lacy H. Thornburg, Attorney General, by Wilson Hayman, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by David W. Dorey, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

Defendant contends that he is entitled to a new trial because of four alleged errors committed by the trial court. First, he contends that the trial court erred in instructing the jury that it could consider the photograph on his 1981 driver's license as evidence of "how he might have looked in 1981" but could not consider the evidence as to "how he looked in 1985." Second, he contends that the trial court erred in refusing to admit into evidence laboratory reports prepared by two forensic chemists for the State Bureau of Investigation. Third, defendant contends that the trial court erred in allowing the district attorney, over defendant's objection, to engage in cross-examination which was improper and prejudicial. Lastly, defendant contends that the trial court erred in refusing to admit into evidence his employee time card which showed that he was at his place of employment at the time the charged offenses allegedly occurred. For the reasons stated in this opinion, we find that the trial court committed prejudicial error in refusing to admit the SBI laboratory reports into evidence, and therefore defendant is entitled to a new trial. Because defendant's remaining assignments of error may not arise at his new trial, they will not be discussed in this opinion.

Defendant was charged with first-degree rape and first-degree kidnapping. The State's evidence tended to show that around 8:30 p.m. on 26 March 1985 the victim[1] was working at a convenience store near Louisburg when a black male of "normal"

---

1. We will not subject the victim to further embarrassment by the use of her name in this opinion.

size entered the store, remained for a few minutes and left. He returned around 9:30 p.m. and forced the victim, at gunpoint, to leave the store with him. He led the victim around the right side of the store, across a field and highway to a path where he had left his automobile, a grey, two-door Chevrolet. The man forced the victim into the passenger side of the car, ordered her to stay down, and drove for about twenty to twenty-five minutes until he stopped in front of a white house with a low porch. Using a key to unlock the door, the man pushed the victim inside the house. Once inside, he forced the victim to remove her clothes and raped her. He then told the victim to get dressed and drove her to an area approximately two miles from her home. After the man let her out of the car, the victim ran to her house. The victim's sister called the police.

The victim was taken to a local hospital where a rape kit was prepared, and then to the courthouse where she gave a statement to the police. She described her assailant as a black man having a thin mustache, a "kind of" wide nose, and a "part" in his hair. She also stated that he was wearing a cap. On the following day, the victim worked with Deputy Wesley Denton, Franklin County Sheriff's Department, in preparing a composite drawing of her assailant. At trial, the victim identified the drawing as a picture of the man who raped her. She also made an in-court identification of defendant as her assailant, describing him as the man seated by Attorney Yarborough (defense counsel). She testified that she had never viewed or been asked to view defendant prior to trial.

Deputy Denton testified that he interviewed the victim at approximately 12:50 a.m. on 27 March 1985. Denton's testimony corroborated that of the victim. He further testified that despite an extensive house by house search over a large area of Franklin County, the police never located the house described by the victim.

Defendant testified and offered several witnesses in his behalf. Defendant's testimony was that he was employed as a dishwasher at Rex Restaurant in Morehead City on 26 March 1985. He arrived at work that evening between 5:30 and 6:00 and left around 10:30. Defendant testified that he remembered what he did on 26 March 1985 because it was the day that he received a refund check from the Internal Revenue Service. He cashed the

check at a local bank and later accompanied his sister to a garage where he paid for repairs which had been made on her car. The teller supervisor at defendant's bank testified that an IRS check written to defendant was cashed at the bank on the afternoon of 26 March 1985. Defendant testified that he had never been in Franklin County and denied any knowledge of the crimes charged.

Defendant offered the testimony of two forensic chemists from the State Bureau of Investigation in his defense. Agent Hamlin testified that a comparison between the negroid pubic hair retrieved from the pubic region of the victim after the rape and defendant's pubic hair revealed that the pubic hair in question "did not originate from [defendant]." Agent Taub testified that after examining the semen found on the victim's panties and defendant's blood sample, he concluded that the semen was not produced by defendant. The court permitted the agents' testimony but sustained the State's objections to both of defendant's attempts to have the laboratory reports introduced into evidence.

Defendant next offered the testimony of his former employer to the effect that his employee time card revealed that he was at work when the charged offenses took place. When defense counsel attempted to elicit this testimony, the State objected and requested a *voir dire*. During *voir dire*, defendant's former employer testified that defendant's time card showed that on 26 March 1985 defendant arrived at work at 6:15 p.m. and left at 10:45 p.m. She said that she was certain that the time card presented at the *voir dire* was the original card issued to defendant because there were notations made by her and her husband on the back of the card relating to defendant's employment. The trial judge ruled that the time card and any testimony concerning it was inadmissible evidence on the grounds that "there existed too much opportunity for alteration and that this card was not kept in the ordinary course of business as intended by the rules of evidence."

Defendant's sister also testified in his defense. She testified that on 26 March 1985 she dropped defendant off at the Rex Restaurant around 6:10 p.m. and picked him up shortly after 10:30 p.m. She further testified that defendant did not own a car. She stated that she remembered the events of 26 March 1985 because

on that day defendant received a check from the Internal Revenue Service and he went with her to pick up her car, a blue 1979 Pontiac, from a garage where it was being repaired.

On rebuttal, the State called an officer with the Louisburg Police Department who testified that he saw defendant in a gas station in Louisburg in December of 1984. Another witness testified that she saw defendant in the store in which she worked in Franklin County buying beer sometime during the third week of March 1985.

The jury returned verdicts of guilty of first-degree rape and first-degree kidnapping.

Defendant contends that the trial court committed prejudicial error in refusing to admit laboratory reports prepared by two forensic chemists with the State Bureau of Investigation. At trial, agent Troy Hamlin, specializing in fiber and hair analysis, testified that he conducted a hair examination comparison on hairs taken from the victim's head and pubic area and hairs taken from defendant's pubic area. The examination revealed that a negroid pubic hair found in the pubic hair combings received from the victim after the rape was microscopically different from defendant's pubic hairs, and therefore the pubic hair in question "did not originate from defendant." The State's objection to defendant's request to have the report introduced into evidence was sustained. Jeb Taub, specializing in the analysis of bodily fluids, testified that he performed tests on a rape kit marked [the victim] and on a blood sample taken from defendant. The tests disclosed that the semen found in the victim's panties was not attributable to defendant. The State's objection to defendant's request to have Taub's report introduced into evidence was sustained. Defendant contends that the reports were admissible as substantive evidence under Rule 803(8)(c) of the North Carolina Rules of Evidence and that the judge's failure to allow the actual reports into evidence constituted prejudicial error.

Under Rule 803(8)(c), records, reports, or statements, in any form, of public offices or agencies, setting forth factual findings, although hearsay, are admissible against the State in a criminal case if "resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate a lack of trustworthiness." N.C.G.S. § 8C-1,

Rule 803(8)(c) (Cum. Supp. 1985); *see also United States v. Mac-Donald*, 688 F. 2d 224 (4th Cir. 1982), *cert. denied*, 459 U.S. 1103, 74 L.Ed. 2d 951 (1983) (construing Fed. R. Evid. 803(8)(c)). The rule is "premised on the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." *Ellis v. International Playtex, Inc.*, 745 F. 2d 292 (4th Cir. 1984) (construing Fed. R. Evid. 803(8)(c)). "If sufficient negative factors are present to indicate the report is not trustworthy, it should not be admitted." *Id.*

The laboratory reports defendant sought to introduce meet the standards of admissibility under Rule 803(8)(c): (a) both reports were prepared by the State Bureau of Investigation, a public office or agency pursuant to authority granted by law, (b) containing factual findings, (c) to be introduced against the State in a criminal case, and (d) containing, given the impartiality of the SBI chemists and the right to examine and cross-examine witnesses, adequate assurances of trustworthiness.

The record does not disclose the basis for the judge's ruling excluding the reports. The State does not argue that the reports are not admissible under Rule 803(8)(c) but instead contends that any error committed by the trial court in refusing to admit the reports was not prejudicial.[2]

We are convinced that the trial judge's error was prejudicial. The ultimate issue was one of identity, *i.e.* whether this defendant committed the charged offenses. It is without question that the laboratory reports would have aided in resolving this issue. The State's own agents' reports unequivocally showed that defendant could not have been the source of the pubic hair or semen found in the victim's rape kit. This fact is of particular significance, since the victim testified that any semen found on her panties had to come from her assailant since she had not otherwise engaged in sexual intercourse on the day she was raped.

2. There is no contention by the State that the reports were excluded in the exercise of the court's discretion under N.C.G.S. § 8C-1, Rule 403, which provides that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

While the SBI agents were allowed to testify at trial as to the contents of their reports, we believe that the exculpatory nature of their conclusions was largely obscured by the trial judge's refusal to allow the reports into evidence. In addition, both agents were cross-examined by the State in such a way as to draw attention away from their conclusions which tended to vindicate defendant as to both offenses. In such a case there was no adequate substitute for having the State's own agents' findings in the hands of the jury.

We note that after the jury began its deliberations it requested and received all exhibits which had been admitted into evidence. Prior to that request, the jury asked the judge whether "evidence by a witness had more weight than physical evidence." The judge instructed the jury that it had to use its own "common experience and common sense" to resolve the question. Under the circumstances of this case, we find that the trial court committed prejudicial error in refusing to allow the SBI forensic chemists' laboratory reports into evidence, and therefore defendant is entitled to a new trial. N.C.G.S. § 15A-1443(a) (1983).

New trial.