PEOPLE v VETTESE

Docket No. 123271. Submitted July 7, 1992, at Detroit. Decided August 3, 1992, at 9:10 A.M. Leave to appeal sought.

Kenneth R. Vettese was convicted by a jury in the Macomb Circuit Court, John B. Bruff, J., of three counts of first-degree criminal sexual conduct, one count of breaking and entering, and one count of unarmed robbery and was sentenced to prison terms of thirty to sixty years for each of the CSC convictions and terms of ten to fifteen years for each of the other convictions. The defendant appealed, claiming that he was entitled to a new trial because of the admission of expert evidence concerning hair found at the scene of the crime, the court's refusal to grant a mistrial during voir dire, and an instruction by the trial court that had the effect of coercing a verdict. The defendant also claimed that the sentences imposed with respect to the CSC convictions violate the principle of proportionality.

The Court of Appeals *held:*

1. The testimony given by the State Police laboratory scientist to the effect that hairs found at the scene of the crime were similar in all respects to hair samples taken from the defendant and could have been the defendant's, even though the witness could not say with certainty that the hairs were the defendant's or what percentage of the population might be the source of that type of hair, was relevant because it placed the defendant within the group of suspects that could have committed the crimes. The probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Other evidence establishing the defendant as the perpetrator was substantial; thus, there is little reason to suppose that the jury accorded undue weight to the hair-matching evidence, particularly in view of the fact that the prosecutor did not place undue stress on the value of this evidence.

2. The claim that the verdict was coerced by the court's

REFERENCES

Am Jur 2d, Expert and Opinion Evidence §§ 278, 301.

Admissibility and weight, in criminal case, of of expert or scientific evidence respecting characteristics and identification of human hair. 23 ALR4th 1199.

instruction to the jury that it would continue deliberations the following day if it had not reached a verdict by 5:00 P.M. is without merit. The instruction was not coercive and was for the purpose of advising the jury regarding what would happen if it had not reached a verdict by that time. The affidavit of a juror, upon which the defendant relies, does not provide a basis for finding coercion, because it is general in nature and does not specifically allege that any of the jurors was coerced into agreeing to the verdict.

3. The defendant was not prejudiced by the questions the prosecutor asked the prospective jurors during voir dire. Accordingly, the court did not abuse its discretion in denying the defendant's motion for a mistrial.

4. Because the sentences are within the sentencing guideline range, they are presumptively proportionate. Although at the upper limit of the range, the sentences are proportionate to the seriousness of the circumstances surrounding the offense and the offender and do not constitute an abuse of discretion.

Affirmed.

EVIDENCE — HAIR-MATCHING EVIDENCE — RELEVANCY.

Evidence that a defendant's hair is similar to hair found at the scene of a crime is relevant even if there is no evidence concerning the proportion of the population having that type of hair (MRE 401).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Carl J. Marlinga,* Prosecuting Attorney, *Robert J. Berlin,* Chief Appellate Lawyer, and *Richard J. Goodman,* Assistant Prosecuting Attorney, for the people.

*John D. Lazar,* for the defendant.

Before: MURPHY, P.J., and SHEPHERD and T. S. EVELAND,* JJ.

SHEPHERD, J. Following a jury trial, defendant was convicted of three counts of first-degree criminal sexual conduct, MCL 750.520(b); MSA 28.788(2), one count of breaking and entering,

* Circuit judge, sitting on the Court of Appeals by assignment.

MCL 750.110; MSA 28.305, and one count of unarmed robbery, MCL 750.530; MSA 28.798. Defendant was sentenced to concurrent prison terms of thirty to sixty years for each of the CSC I convictions and ten to fifteen years each for the breaking and entering and unarmed robbery convictions. Defendant appeals as of right, and we affirm.

Defendant's convictions arose out of events that occurred in the early morning hours of May 10, 1988, in the victim's house in Warren. The victim testified that she was awakened at approximately 3:00 A.M. by a man standing next to her bed. The man knocked off her glasses, put his hand over her eyes, and turned off the light. The victim testified that just before he knocked off her glasses, she recognized her assailant as her former baby-sitter's boyfriend. The victim testified that she felt something sharp in her side and that defendant put a pillow over her face and forced her to put her hands to her sides. After completing the sexual assault, the assailant left the bedroom and ran out the front door of the house, taking the victim's purse that was on the dining room table.

Defendant first argues that the trial court committed error requiring reversal by permitting Glen Moore, a crime laboratory scientist with the Michigan State Police, to testify as an expert in the field of hair analysis regarding a comparison of hair samples. At trial, Moore testified, over a defense objection, that he analyzed several hairs taken from the victim's bedsheets and that one of the hairs was similar in all respects to a pubic hair taken from defendant and could have come from defendant. The expert testified that both sets of pubic hair came from a Caucasian with a Mediterranean background. However, the expert was unable to say with certainty that defendant was the

source of the hair or what percentage of the subgroup population might be the source.

Defendant urges us to consider Judge PETERSON's forceful dissent in *People v Kosters,* 175 Mich App 748, 757-776; 438 NW2d 651 (1989), lv gtd 434 Mich 900 (1990), vacated and lv den 437 Mich 937 (1991). In *Kosters,* the defendant was convicted of sexually molesting his young son and daughter. There, a majority of this Court held that evidence comparing a sample of the defendant's pubic hair with pubic hairs that were found on the daughter's diaper immediately after the defendant's admitted visitation with her was admissible under MRE 401 because it tended to connect the defendant with the crime.

In his dissent, Judge PETERSON argued that the pubic-hair evidence should have been excluded under MRE 702, MRE 401, and MRE 403. First, he argued that even if the hair comparison evidence satisfies the test adopted from *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955), and *Frye v United States,* 54 US App DC 46; 293 F 1013 (1923), relative to allowing an expert to testify concerning his findings or opinion, the expert was limited to describing the hairs as being Caucasian pubic hairs and could not testify concerning whether the hairs could or might be from the defendant, because such testimony was not necessary to help a jury understand the evidence under MRE 702. Under the *Davis-Frye* rule, novel scientific evidence must be shown to have gained the general acceptance of the particular field in which it belongs to be admissible at trial. *People v Young,* 418 Mich 1, 17-18; 340 NW2d 805 (1983), after remand 425 Mich 470; 391 NW2d 270 (1986).

Judge PETERSON also argued in opposition to various panels of this Court that had admitted hair-matching evidence under MRE 401. See *Peo-*

*ple v Horton,* 99 Mich App 40; 297 NW2d 857 (1980); *People v Goree,* 132 Mich App 693; 349 NW2d 220 (1984); *People v Furman,* 158 Mich App 302; 404 NW2d 246 (1987). In *Kosters,* Judge PETERSON argued that the evidence in question suggests neither a greater nor a lesser probability that the hairs were from the defendant, because no evidence of probability was shown. Moreover, even if the expert testimony had any relevance, Judge PETERSON contended that it should be excluded under MRE 403, because its probative value was substantially outweighed by the prejudicial effect of superficial scientific testimony.

In their respective dissents to the Supreme Court's order vacating its previous order granting leave to appeal, Chief Justice CAVANAGH and Justice LEVIN agreed with Judge PETERSON that it was error to admit the hair-matching evidence. *Kosters, supra,* 437 Mich 937-952. Chief Justice CAVANAGH argued that the hair-matching evidence was inadmissible because the expert testimony was irrelevant and improper and because the prosecutor's distortion and misrepresentation of the nature of the evidence during closing argument may have prejudiced the defendant and influenced the verdict. Chief Justice CAVANAGH stated:

> The expert's testimony thus lacked any significant probative value for purposes of identifying the defendant as the source of the disputed hairs. See MRE 401. Because, on the basis of the expert's testimony, it is conceivable that thousands of individuals in the local area might have produced the hairs, this evidence established only an infinitesimally small possibility that the defendant and the abuser were one and the same individual. Any minuscule probative value such evidence might have would clearly be outweighed by the unfair prejudicial effect. See MRE 403. [*Id.,* pp 939-940].

In arguing that the evidence lacked any significant probative value, Chief Justice CAVANAGH noted that the expert witness could not provide "*any* meaningful statistical grouping for the jury" and could only arrive at "the meaningless conclusion that the disputed hairs *might* have come from defendant, just as they *might* have come from any other Caucasian." Emphasis in original; *id.,* p 942.

More importantly, however, Chief Justice CAVANAGH found that the "jury may have vested this evidence with undue weight," owing to the prosecutor's misleading and distorted presentation of the hair-analysis evidence. During closing argument, the prosecutor argued:

> [C]ould it be that somebody else has pubic hair with a similar characteristic to that? Yes, it's possible, but it's not likely. Not likely, not likely, not likely, not likely, not likely, not likely. Seven times.
>
> Add it all up. Is it possible that this could be somebody else's pubic hair other than Elroy Kosters? It's possible. How likely? We don't know. There are no numbers for that sort of thing. [*Id.*]

In his dissent, Justice LEVIN agreed with Chief Justice CAVANAGH that the hair-sample evidence was "pseudoscientific evidence that might very well have misled the jury." *Id.,* p 952.

In the instant case, we must conclude, as have previous panels of this Court that have addressed the question of the admissibility of hair-matching evidence offered by an expert, that the trial court's admission of this type of evidence did not constitute error requiring reversal. See *People v Hayden,* 125 Mich App 650, 658-659; 337 NW2d 258 (1983). First, microscopic hair analysis satisfies the *Davis-Frye* test for admissibility of scientific opin-

ion testimony. *People v Watkins,* 78 Mich App 89, 95-96; 259 NW2d 381 (1977).

Second, the hair-matching evidence constitutes relevant evidence under MRE 401. In this case, the testimony that the pubic hair found in the victim's bed was similar in all relevant respects to the defendant's pubic hair has probative value, because it places defendant within the group of suspects that could have committed the crimes and thereby makes it more probable than not that defendant was the perpetrator. In finding that this evidence satisfies MRE 401, we note that it is not necessary to provide evidence of degrees of probability, as Judge PETERSON contended. The fact that defendant was not excluded from the class of possible suspects suffices to show that the evidence is relevant and is entitled to some weight by the jury, even though the expert did not positively identify defendant as the source of the pubic hair found in the victim's bedsheets. Equally, we note that this type of evidence could also be relevant to exclude a person as a possible suspect in a case. See, e.g., *State v Acklin,* 317 NC 677; 346 SE2d 481 (1986), where the Supreme Court of North Carolina found prejudicial error requiring a new trial in a rape and kidnapping prosecution where the trial court refused to admit laboratory reports showing that pubic hair and semen found on a victim were not attributable to the defendant.

Further, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice under MRE 403. In this case, there was substantial, if not overwhelming, evidence of defendant's guilt. The victim identified defendant as the perpetrator. Although the victim saw her assailant for just one second, she immediately recognized him as her baby-sitter's former boyfriend, who lived down the street from her.

Further, defendant owned a blue jean jacket and black leather gloves similar to what the victim's assailant was wearing. The evidence also indicated that defendant apparently entered the home through the kitchen window. Afterwards, a large knife with a black handle was discovered in the kitchen sink, and a smaller knife with a pearl handle and a serrated blade was found in the victim's bed. Neither knife belonged to the victim. However, both knives matched other knives that were found several days later in defendant's house when the police searched his house pursuant to a search warrant. The police found five knives in a kitchen drawer identical to the knife found in the victim's bed. The police also found a butcher-block knife holder on his kitchen counter that was missing one knife similar to the large black-handled knife found in the kitchen sink.

Moreover, there is little reason to suppose that the jury in this case accorded undue weight to this evidence. During closing argument, the prosecutor fairly summed up the expert's testimony:

> You recall that he told you that, in all respects, the hair that was found in the bed is similar to the known pubic hairs of Kenneth Vettese. That fact, in of itself [sic], does not, I submit, conclusively prove that Kenneth Vettese is the guy. But the mere fact that the hairs in the bed and the hairs plucked from Kenneth Vettese are similar in every respect and at least puts him in the group of people to be considered by you.

We do not believe that the prosecutor's characterization of the testimony prejudiced defendant or improperly influenced the verdict. Unlike his counterpart in *Kosters* who apparently sought to exploit the jury's potential misapprehension of this

evidence, the prosecutor in this case presented the evidence as being no more valuable than it actually was, made the jury aware of the limitations of this evidence, and asked the jury to consider it for whatever benefit it may provide.

If the prosecutor had offered only the hair-matching evidence in support of the identification of the defendant, we would have been constrained to conclude that its prejudicial effect substantially outweighed its probative value. By the same token, if the prosecutor had presented the hair-matching evidence in an otherwise weak case in which the other evidence was not sufficient to establish the defendant's guilt, we similarly would be constrained to conclude that the evidence was more prejudicial than probative. See *State v Stallings,* 77 NC App 189; 334 SE2d 485 (1985), where the court concluded that evidence of microscopic hair analysis was insufficient to take a case to the jury absent some other substantial evidence of guilt. Where, as here, the prosecutor has substantial, if not overwhelming, evidence of a defendant's guilt and presents the hair-matching evidence with circumspection, then we do not see how its probative value could be substantially outweighed by any unfair prejudice.

We further note that reversal in this case would be warranted only if the Michigan Supreme Court adopted a rule excluding all hair-analysis testimony offered by an expert because the prejudicial effect substantially outweighs its probative value in all circumstances. Under such a rule, the introduction of hair-matching evidence could never constitute harmless error. As yet, our Supreme Court has not decided this precise question. Further, even Chief Justice CAVANAGH in his dissent in *Kosters* does not clearly embrace a rule excluding this type of evidence in all circumstances. We

note that no other jurisdiction that has considered this question has adopted such a rule.

Defendant next argues that he was denied his right to a fair trial because the trial court gave a coercive instruction to the jury and because the atmosphere surrounding the jury's deliberations was coercive. In support of this claim, defendant presents the affidavit of juror Kyla Miller, who contacted defendant and his counsel more than a year after the verdict. In her affidavit, juror Miller states that the members of the jury were coerced and pressured by the trial court's instruction to reach a verdict by 5:00 P.M. or return the next day and that certain members of the jury coerced three or four jurors into reaching a guilty verdict so that the jurors would not have to return the next day. The affiant also states that the holdout jurors were coerced by this deadline because the jury was over term and that one juror was excused when she lost her job because of her jury service.

Claims of coerced verdicts are reviewed case by case, and all the facts and circumstances, including the particular language used by the trial court, must be considered. *People v Malone,* 180 Mich App 347, 352; 447 NW2d 157 (1989). As a general rule, jurors may not impeach their verdicts by affidavits. *People v Pizzino,* 313 Mich 97; 20 NW2d 824 (1945); *Hoffman v Monroe Public Schools,* 96 Mich App 256; 292 NW2d 542 (1980). However, affidavits or testimony impeaching the verdict are properly received where they concern overt acts, accessible to the knowledge of all the jurors, that do not involve matters inhering in the verdict. *People v Graham,* 84 Mich App 663; 270 NW2d 673 (1978). Mistakes or misconduct inherent in the verdict may not be challenged. *Id.* Moreover, a reviewing court should not rely upon an affidavit that is generalized, ambiguous, or vague. *Id.; Peo-*

*ple v Van Camp,* 356 Mich 593; 97 NW2d 726 (1959).

In the instant case, the trial court instructed the jury as follows:

> And if you have not arrived at a verdict by 5:00 [P.M.], you will be excused and asked to report back here tomorrow morning at 8:30 and commence your deliberations in the morning.

It is clear that the trial court's instruction was not coercive and merely indicated that the jurors would have to return the next day if they did not reach a verdict by 5:00 P.M. There is nothing in the trial court's instruction to suggest that the jurors had to reach a verdict by that time.

Further, we find no basis upon which to consider juror Miller's affidavit. The affidavit contains only vague allegations dealing with matters inherent in the verdict that may not be challenged. *People v Graham, supra.* While the affiant alleges that the jurors were influenced by the fact that one juror had lost her job because of jury service, there is no suggestion that the remaining jurors were confronting a similar situation or were influenced by the excused juror's situation. Thus, we conclude that defendant was not denied a fair trial because of the trial court's instruction or a coercive atmosphere during the jury's deliberations.

Defendant also contends that the trial court erred in denying his motion for a mistrial, in which the defendant argued that the prosecutor improperly shifted the burden of proof to defendant during voir dire by asking prospective members of the jury whether they would have a problem in determining intent by defendant's words and actions.

Denial of a motion for a mistrial rests within

the sound discretion of the trial court and will not be disturbed unless such denial constituted an abuse of discretion. *People v Von Everett,* 156 Mich App 615, 621-622; 402 NW2d 773 (1986). To find error requiring reversal, a trial court's denial of a mistrial must have been so gross as to have deprived the defendant of a fair trial and to have resulted in a miscarriage of justice. Reversal is not warranted unless the defendant makes an affirmative showing of prejudice resulting from the abuse of discretion. *Id.*

After a review of the record, we find nothing to indicate actual prejudice to defendant or that he was denied a fair trial. Thus, the trial court did not err in refusing to grant defendant's motion for a mistrial.

Defendant next claims that he was denied a fair trial owing to the cumulative effect of the errors. We find this claim to be without merit.

Defendant finally claims that his sentence of thirty to sixty years in prison for each of the three convictions of first-degree criminal sexual conduct violates the principle of proportionality enunciated in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990). We disagree.

In *Milbourn,* pp 635-636, 654, the Supreme Court held that a sentencing court abuses its discretion when it violates the principle of proportionality, which requires a sentence to be proportionate to the seriousness of the crime and the defendant's prior record. The second edition of the sentencing guidelines is the best "barometer" of proportionality. *Id.,* p 656. A sentence within the guidelines is presumptively proportionate. *People v Broden,* 428 Mich 343, 354; 408 NW2d 789 (1987).

In the instant case, the sentencing guideline

range for each CSC I conviction was 180 months to 360 months. Defendant's thirty-year minimum sentence for each CSC I conviction was at the maximum of the sentencing guidelines minimum range of thirty years, and thus presumptively proportionate. Defendant has not presented mitigating factors relating to his criminal history or the circumstances of these offenses sufficient to overcome this presumption of proportionality. *People v Dukes,* 189 Mich App 262, 266; 471 NW2d 651 (1991). Although defendant asserts that this case and the offender are far from being the "worst," we note that defendant broke into the victim's home, raped her repeatedly while armed with a knife, and threatened to kill her and her two children, ages ten and twelve at the time, who were awakened by their mother's screams but were too frightened to leave their adjoining bedrooms to come to her aid. Having reviewed the record, we conclude that defendant's sentences are proportionate to the seriousness of the circumstances surrounding the offenses and the offender and do not constitute an abuse of discretion.

Affirmed.