# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES WELDON SILVER,

Defendant-Appellant.

UNPUBLISHED
July 28, 2015

No. 322651
Sanilac Circuit Court
LC No. 14-007247-FH

Before: SAWYER, P.J., and DONOFRIO and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right from his conviction following a jury trial of breaking and entering a building with intent to commit a felony, MCL 750.110, and receiving stolen property between $200 and $1,000, MCL 750.535(4)(a). The trial court sentenced defendant to 180 days jail on each conviction and 24 months' probation on the breaking and entering conviction. For the reasons set forth in this opinion, we affirm defendant's convictions and sentences.

## I. BACKGROUND

In November 2013, Mark Schweitzer, owner of a warehouse where plumbing, heating, and excavating equipment is stored in Delta Township, discovered that his warehouse had been entered and several items were missing, including various equipment and six fox hides (four red and two gray). Surveillance cameras captured the image of a man exiting a pickup truck parked outside the building and then moving within the warehouse. According to police testimony, the video was of such poor quality that the man could not be identified. However, Sanilac County Sheriff's Department Deputy Shelly Marie Park believed that the pickup pictured was a Dodge. Schweitzer provided the names of prior employees who may have been motivated to break into the warehouse, and Park's investigation lead to one prior employee who had a Dodge pickup truck. Park found the vehicle, which had a flat tire and appeared to Park to be smaller than the one in the video. Although Park was not able to speak directly to the former employee, she was able to speak with the individual's landlord, who stated that the truck "hasn't moved in months."

Schweitzer made calls to known fur buyers and was contacted by Mason Haynes, who told Schweitzer that defendant had sold him six furs matching Schweitzer's description. Using defendant's I.D. and fur harvest license, Haynes obtained from defendant during the purchase, Sanilac County Sheriff's Department Deputy Michael Moore went to speak with defendant. According to Moore, Haynes informed the officer that defendant stated he trapped and skinned

-1-

the furs himself. Moore testified that defendant told the officer that on the Friday before the break-in, his truck's radiator broke, and the truck was in his driveway all weekend until it was later towed to a mechanic. Later, after the authorities located the pickup, defendant explained that while at a hunting camp the weekend before the break-in, he was approached by a man known as "Tim, Timmy, or Tammy" who asked him to borrow his truck, to which defendant agreed. Defendant said that the man broke his radiator and, feeling guilty, offered to sell defendant the fox furs for the discounted price of $60. Moore investigated defendant's story in an effort to locate Tim. Moore reviewed camper-registration cards provided by a DNR officer and testified that "there were none with the name Tim or anything resembling Tim." Moore testified that he also asked two people who were camping in the area "if they knew an individual by the name of Tim" or anyone who would have parked a camper in a certain location, and both "were unwilling to come up with . . . anybody." A third man told Moore that the camper that had been parked next to his for the half a day he was there "was completely different than that of which [defendant] said was there for this Tim individual." Defendant was convicted and sentenced as indicated above. This appeal then ensued.

## II. HEARSAY AND INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

On appeal, defendant first argues that he is entitled to a new trial because the trial court admitted hearsay testimony from Park regarding statements made by the landlord of one of Schweitzer's prior employees, and from Moore regarding statements made by the DNR officer and three campers about their knowledge, or lack thereof, of someone named Tim. Defendant further argues that the deputies' testimony violated the Confrontation Clause of the federal and state constitutions. US Const, Am VI; Const 1963, art 1, § 20. Because defendant failed to object to the disputed testimony at trial, both claims of error are unpreserved. *People v Carines*, 460 Mich 750, 767; 597 NW2d 130 (1999). Therefore, in order to prevail on appeal, defendant must show that (1) error occurred, (2) the error was plain, and (3) the error affected his substantial rights. *Id*. at 763. Additionally, "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. (Citations and internal quotation marks omitted; alteration by *Carines* Court).

Hearsay is an "extrajudicial statement offered into evidence to prove the truth of the matter asserted." *People v Eady*, 409 Mich 356, 360; 294 NW2d 202 (1980); MRE 801(c). "Hearsay evidence is not admissible except as provided by the rules of evidence." *Eady*, 409 Mich at 361; MRE 802. The Confrontation Clause prohibits the admission of out-of-court testimonial statements unless the declarant was unavailable at trial and defendant had a prior opportunity for cross-examination. *Crawford v Washington*, 541 US 36, 69; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Statements not offered for the truth of the matter asserted are not barred by the Confrontation Clause. *People v Chambers*, 277 Mich App 1, 10-11; 742 NW 2d 610 (2007).

Park explained that, when she followed up on Schweitzer's tip that a past employee who owned a pickup truck may have been motivated to break into the warehouse, the employee's landlord stated that the truck "hasn't moved in months." Defendant argues there is no "police exception" to the hearsay rule and because this statement was offered for the truth of the matter asserted in order to provide an inference of defendant's guilt by eliminating the employee as a

suspect, defendant's Sixth Amendment right of confrontation was violated. Defendant's assertion in his brief on appeal that there is no "police exception" to the hearsay rule is an accurate statement of law. However, the complained-of testimony must still constitute hearsay, and, as previously stated, hearsay is generally defined as "an extrajudicial statement offered to prove the truth of the matter asserted." *Eady*, 409 Mich at 360. Here, the statement that the truck "hasn't moved in months" was not offered to prove the statement therein made was true; rather, the statement was part of the narrative of Park's investigation offered to show why she investigated other possible suspects. Hence, while there is no "police exception" to the hearsay rule, a "statement offered to show why police officers acted as they did is not hearsay." *Chambers*, 277 Mich App at 11. Contrary to defendant's assertions on appeal, this Court's finding in *Chambers* did not create a "police exception" to the hearsay rule but rather accentuated a basic tenet of what constitutes hearsay. The hearsay rule's preference for having the actual speaker present in court and available to answer clarifying questions has no application where the proponent's effort is to prove that the words were said rather than that the words were true. It similarly follows then, that "a statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause." *Id.* at 10-11; see also *People v Putman*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 318788); slip op at 3.

Defendant also challenges testimony given by Moore that a DNR officer and three campers said that they had no knowledge of a person named "Tim," and about reviewing camper registration cards provided by the DNR officer. Again, defendant asserts that these statements were offered to discount defendant's version of the events and therefore violated his Sixth Amendment right of confrontation. With respect to Moore's testimony that there were no camper-registration cards with "the name Tim or anything resembling Tim" on them, this was Moore's observation, not testimony about a statement offered by the DNR officer. Accordingly, this testimony did not constitute hearsay. *Eady*, 409 Mich at 360. However, testimony about statements made by the three campers does constitute hearsay.

On appeal, the State, relying on *Chambers*, 277 Mich App at 11, argues that similar to Park's testimony, Moore's testimony showed "how defendant came to be arrested," i.e. it was relevant to whether defendant's story could be corroborated and could have potentially extinguished any suspicion that defendant committed the break-in. This explanation does not comport with the record evidence. Prior to Moore questioning the campers, defendant admitted he sold the furs belonging to the victim but claimed he got the furs from Tim, who in exchange for damaging defendant's radiator offered the furs at a discounted rate. Thus, Moore was investigating whether anyone named Tim was present at the campground at the time the campers' statements were made. The prosecution, in its closing argument, stated that this case "would come down to credibility," and defendant "lies over and over. And not until five days later which he then has the story in terms of the Tim. You heard this officer's [Moore's] attempt to verify some portion or any portion of that and wasn't able to do so, not at all." Though the State's main argument on appeal—that the statement was offered to simply show why defendant was arrested is somewhat plausible—the prosecution's closing statement that defendant "lies over and over . . ." reveals that the statements were offered to prove the truth of the matter asserted, namely, that no one named Tim, and no vehicle matching the description provided by defendant, was at the campground. Accordingly, the prosecution's solicitation of these hearsay statements violated defendant's Sixth Amendment right of confrontation and constituted plain error. Additionally, we conclude that, it was not reasonable for defense counsel to fail to object

-3-

to this hearsay testimony. Therefore, trial counsel's failure to object leads us to conclude that relative to the hearsay testimony offered by Moore, trial counsel's representation fell below an objective standard of reasonableness such that it constituted ineffective assistance of counsel. See *People v Toma*, 463 Mich 281, 302; 613 NW2d 694 (2000).

"As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Bullcoming v New Mexico*, 564 US___ 131 S Ct 2705, 2713; 180 L Ed 2d 610(2011). "To rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.'" *Id*. at 2714 n 6, quoting *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006). The constitutional concern is out-of-court statements of witnesses, that is, persons "who bear testimony against a defendant." *Fackelman*, 489 Mich at 528. See also, *People v Henry*, 305 Mich App 127, 154; 854 NW2d 114 (2014).

Having shown that Moore's testimony relative to the campers' statements was not limited to why he proceeded in a certain direction with his investigation, and therefore violated defendant's Sixth Amendment right of confrontation, defendant must next show that the improper testimony affected his substantial rights. *Carines*, 460 Mich at 763-764. In this case, it was uncontroverted that defendant's vehicle was present at the warehouse on the night of the larceny. It was also uncontroverted that defendant possessed the furs which came from the victim's warehouse. The only question left open was how defendant came to possess those furs. Defendant claimed that he bought the furs at a discounted rate from a man named Tim. However, defendant's credibility was in question, given his testimony that he initially lied to the deputies, and thus, any improper evidence regarding these declarants' statements did not unduly compromise the outcome of the trial. See *People v Ortiz*, 249 Mich App 297, 312-313; 642 NW2d 417 (2002). As was the case in *Henry*, 305 Mich App at 154, the proffered testimony of the campers could have been admissible had Moore limited his testimony to general observations of the campsite and the fact that his investigation did not reveal evidence that Tim was present. Consequently, even without the declarants' statements, the jury would have heard that Moore did not find any evidence of anyone registering at the campground under the name of Tim. And, the jury was permitted to hear Moore's testimony that his review of the camper registration cards did not reveal anyone with the "name of Tim or anything resembling Tim." Consequently, examination of the untainted evidence produced at trial leads us to conclude that defendant cannot show that the improper aspects of Moore's testimony affected the outcome of the proceedings and, therefore, he is not entitled to a new trial on this basis. *People v Moorer*, 262 Mich App 64, 75; 683 NW2d 736 (2005).

Additionally, for the reasons stated above, defendant's claim of ineffective assistance of counsel warranting reversal of his convictions fails because defendant cannot show that, but for counsel's deficient performance, a different result would have been reasonably probable. *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011); see also, *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Relative to Park's testimony and Moore's testimony about the lack of "camper cards with the name Tim . . .," because that testimony was properly admitted, "any objection on this basis [hearsay] would have been futile, and defense counsel is not ineffective for failing to make a futile objection." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012). Again, the untainted evidence revealed that defendant admitted his truck was present at the warehouse the night of the break-in and larceny.

Defendant initially stated to investigators that the furs were his, but later admitted he had lied and then told police that he acquired them from someone named Tim. Moore went to the campground where defendant allegedly met with and bunked with Tim but was unable to find any campground registration with the name Tim "or anything resembling Tim." After examination and consideration of this untainted evidence, we cannot find that trial counsel's failure to object to Moore's hearsay statements constituted error "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). Nor can defendant show that a different result would have been reasonably probable had counsel objected. *Armstrong*, 490 Mich at 290; *Strickland*, 466 US at 687-688; see also, *Carines*, 460 Mich at 763. Accordingly, defendant is not entitled to reversal of his convictions.

### III. FAILURE TO GIVE STANDARD JURY INSTRUCTION

Defendant next argues that the trial court committed reversible error by failing to give the ABA standard deadlocked jury instruction, CJI 2d 3.12. Because defendant failed to "object or request a given jury instruction to preserve the error for review . . . this Court will grant relief only when necessary to avoid manifest injustice." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657-658; 620 NW2d 19 (2001); see also MCL 768.28. "[A]bsent a finding that relief is necessary to avoid manifest injustice," the issue is waived. *Sabin (On Second Remand)*, 242 Mich App at 658; see also *People v Pollick*, 448 Mich 376, 387; 531 NW2d 159 (1995).

A little over two hours after the jury began deliberating, the jury asked the bailiff, "what happens if . . . we can reach a decision on one count, we can't reach a decision on the other count." "[T]hey have to keep on deliberating," the judge responded. The trial court further told the jury:

> It is now 5:30. I know you folks have been working really, really hard and we appreciate that. And I know it's not easy, it's a difficult job. So here's what we're gonna do, if you want to continue to deliberate today, we can go to 6:00, you'll get another ½ hour, if you would prefer I can send you home now and we'll start up at 9:00 tomorrow morning, if you can't reach a decision by 6:00 tonight, then I'll have you back tomorrow morning at 9:00 to continue to deliberate. So I want you to go back to the Jury room, discuss that and let the Bailiff know if you want to stay here for another ½ hour today or whether you want to come back tomorrow morning at 9:00. Thank you.

The jury returned a verdict twenty minutes later.

On appeal, defendant argues that the trial court's instruction on how the jury was to proceed was unduly coercive and pressured the jury into reaching "a hasty decision." Defendant further argues that trial counsel was ineffective for failing to object to the court's instruction. "Claims of coerced verdicts are reviewed case by case, and all the facts and circumstances, including the particular language used by the trial court, must be considered." *People v Vettese*, 195 Mich App 235, 244; 489 NW2d 514 (1993).

Our Supreme Court has sanctioned proper jury instructions governing juror deliberations and held that "substantial departures from the ABA standard instruction would be reversible error." *Pollick*, 448 Mich at 383 (internal quotation marks and citation omitted). Defendant asserts that this instruction was a substantial departure from the standard ABA deadlock jury instruction, CJI 2d 3.12. "[T]he test for determining whether instructional language substantially departs from the ABA standard is whether the instruction is unduly coercive, not whether the circuit court used words that match the words in the ABA standard." *Pollick*, 448 Mich at 383. Thus, the question to be asked, the Court explained, is "'could the instruction given cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement?'" *Id*. at 384, quoting *People v Hardin*, 421 Mich 296, 314; 365 NW2d 101 (1984).

The State argues that the jurors never unequivocally indicated that they were deadlocked. There is nothing in the question presented by the jury to the trial court that would necessitate a finding by this Court contrary to the assertions of the State. However, in order to facilitate a thorough review of this issue, we assume, without deciding, that the jury meant to tell the trial court that they were unable to reach a verdict on one of the two counts. Even assuming that to be true however, defendant has not demonstrated any error committed by the trial court relative to its instruction.

On this issue, we find the facts presented are similar to those presented to this Court in *Vettese*, 195 Mich App at 244. In *Vettese*, the trial court instructed the jury that "'if you have not arrived at a verdict by 5:00 [p.m.], you will be excused and asked to report back here tomorrow morning at 8:30 and commence your deliberations in the morning.'"[1] *Id*. at 245. In declining to find such an instruction coercive, this Court stated:

> It is clear that the trial court's instruction was not coercive and merely indicated that the jurors would have to return the next day if they did not reach a verdict by 5:00 p.m. There is nothing in the trial court's instruction to suggest that the jurors had to reach a verdict by that time. [*Id*.]

Moreover, in viewing this case "as a whole," *People v Malone*, 180 Mich App 347, 353; 447 NW2d 157 (1989), it is notable that before the jurors began deliberations, the trial court instructed that in trying to reach an agreement, "none of you should give up your honest opinion about the case just because the other Jurors disagree with you or just for the sake of reaching a verdict." It is well-settled law that jurors are presumed to follow their instructions. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Furthermore, the tenor with which the trial court spoke to the jury does not convey an air of intimidation. Instead, the trial court praised the jurors for their hard work and acknowledged that their job was a difficult one.

Examination and consideration of the evidence presented on this issue leads us to conclude that the trial court's instruction was not unduly coercive because it would not have "cause[d] a juror to abandon his conscientious dissent and defer to the majority solely for the

---

[1] The opinion does not state if there was a question submitted by the jury which prompted the trial court's above-quoted statement.

sake of reaching agreement." *Hardin*, 421 Mich at 314; see also, *Mahone*, 294 Mich App at 212. Additionally, because the trial court's instruction was proper, trial counsel was not ineffective for failing to make a futile objection to a proper jury instruction. See *Eisen*, 296 Mich App at 329.

Affirmed.

/s/ David H. Sawyer
/s/ Pat M. Donofrio
/s/ Stephen L. Borrello