# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CORY KENTRELL JEFFREY,

       Defendant-Appellant.

UNPUBLISHED
March 15, 2018

No. 334987
Macomb Circuit Court
LC No. 2015-002320-FC

Before: M. J. KELLY, P.J., and JANSEN and METER, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of first-degree criminal sexual conduct, MCL 750.520b(1)(a); MCL 750.750.520b(2)(b), for which the trial court sentenced him to 300 to 732 months' imprisonment. We affirm.

Defendant was convicted of sexually assaulting his five-year-old niece, MC, on March 14, 2015, at a home in Warren. Evidence was presented that MC and her two siblings stayed the night with their grandmother, who resided in the same house as defendant. According to MC, while she was asleep in her grandmother's bedroom, defendant came into the room, pulled down her pants, and "put his wee-wee in [her] but[t]." When defendant "was done," he wiped his "wet" "wee-wee" on a blanket. MC testified that it felt "painful." MC's brother, eight years old at the time of trial, was also sleeping in the bedroom; he eventually said something to their mother, which led to a police investigation and defendant's arrest. In addition to the charged offense, the prosecution presented evidence of another incident that occurred in January or February 2015; defendant's younger sister's 13-year-old friend accused defendant of inserting his penis into her anus while she was sleeping in the same house. At trial, the defense denied that defendant committed either act.

## I. IMPROPER VOUCHING

Defendant first complains that a County Child Advocacy Center (CARE House) worker improperly vouched for MC's "honest" demeanor during a CARE House interview, and that Warren Police Detective Jim Twardesky also improperly vouched for MC's credibility during the detective's interview with defendant. Defendant argues that the trial court abused its discretion by denying his motion for a mistrial on the basis of this testimony. We disagree. We review a trial court's ruling on a motion for a mistrial for an abuse of discretion. *People v*

*Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Id*. A mistrial should be granted "only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Id*. (quotation marks and citations omitted).

## A. THE CARE HOUSE INTERVIEWER

During the prosecutor's direct examination of the CARE House interviewer, the following exchange occurred:

> *Q*. Okay. Now, specifically, when you interviewed [MC]—I'm not asking you at all what she said because that would be hearsay. But did you provide the details of the assault to her or did she provide the details to you?
>
> *A. She provided the details.*
>
> * * *
>
> *Q*. Okay. Can you describe [MC's] demeanor during the questioning.
>
> *A. She was forthcoming. She provided details. She was cooperative.*
>
> * * *
>
> *Defense counsel*: Judge, I have to object again, Judge, I have to.
>
> *The prosecutor*: These are her observations, your Honor, of the child's demeanor. I think its's relevant and probative of the process.
>
> *The trial court*: I think she's testified pretty thoroughly as to her process. I don't think we need anything further in that regard.
>
> *The prosecutor*: I will move forward, your Honor. [Emphasis added.]

"A mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992). Defendant correctly notes that it is generally improper for a witness to provide an opinion regarding the credibility of another witness because credibility is a determination for the trier of fact. *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). Also, "[a]n expert may not vouch for the veracity of a victim." *Id*. We agree with the trial court, however, that the challenged testimony was not grounds for a mistrial. The interviewer was in the midst of explaining CARE House protocols and her experience with interviewing children as they discuss specific times or a sequence of events. In a follow-up question regarding MC's demeanor during the interview, the interviewer testified that MC was forthcoming, provided details, and was cooperative. The focus of this testimony involved MC's conduct and demeanor during the interview; it did not involve an opinion that the interviewer believed that MC was honest, that MC should be believed because the interviewer thought she

was honest, or that the interviewer believed that defendant was guilty. Further, the response about MC's demeanor was brief, and the prosecutor did not emphasize this testimony to the jury. Therefore, it is unlikely that defendant suffered any prejudice. A trial court's denial of a motion for mistrial will not be reversed on appeal absent an affirmative showing of prejudice. *People v Vettese*, 195 Mich App 235, 246; 489 NW2d 514 (1992). In sum, the trial court did not abuse its discretion by denying defendant's motion for a mistrial.

## B. THE POLICE DETECTIVE

Defendant also argues that Det. Twardesky improperly vouched for MC's credibility in the following exchange concerning the detective's interview with defendant:

> *Q.* [by the prosecutor] Okay. And what helps you decide which [questioning techniques] to use or is there somewhere in the middle sometimes?
>
> *A.* No. I mean the case facts are the number one factor. For this particular case, there would be a witness. To have an eyewitness in a child sexual abuse case is pretty rare. So this was very, in my perspective, with a witness *it's a very strong case*.
>
> Other factors come in. The defendant's body language, his response to questions during the interview phase. [Emphasis added.]

The emphasized remark was not improper, let alone grounds for a mistrial. The question and the detective's response were not made in an attempt to persuade the jury to convict defendant based on the detective's opinion that MC and her brother were credible, but to establish the thoroughness of the investigation itself and support the detective's chosen interrogation technique. Indeed, the detective made the comment in the context of discussing the difference between an interview and interrogation, different techniques, and why he chose to question defendant as he did. This line of questioning was relevant because defendant raised issues of false and coerced confessions. In explaining his approach, the detective stated that this was a "very strong case" because it is rare to have an eyewitness in a child-sexual-abuse case. The challenged testimony was not equivalent to the detective's vouching for MC's credibility. In fact, there was no indication that the detective had interviewed either MC or her brother.

Defendant also adds that, in the following exchange, Det. Twardesky improperly opined that this incident was not a "one-time mistake" by defendant:

> *Q.* We heard you say during the course of the questioning that sometimes suspects make a one-time mistake. Is it true that you're the officer in charge of another investigation with [defendant]?
>
> *A.* Yes, sir.
>
> *Q.* Okay. And based on that investigation, do you believe this was a one-time mistake?
>
> *A.* No.

Immediately after this exchange, the detective testified that based on his investigation, CN, a 13-year-old-female, "experienced a very similar incident." Defendant does not explain why this exchange was improper. Det. Twardesky was the officer in charge of the CN investigation, and the prosecutor's "one-time mistake" inquiry was simply a preamble to the detective's testimony about this admissible other-acts evidence. Defendant has not made an affirmative showing of prejudice as a result of Det. Twardesky's testimony, or demonstrated that the trial court abused its discretion by denying his motion for a mistrial. *Id*. Reversal is unwarranted.

## II. MC'S STATEMENTS

Defendant next argues that a new trial is required because of the admission of MC's statements to an emergency room (ER) physician to the effect that defendant sexually assaulted her. Defendant argues that MC's statements were inadmissible hearsay. As defendant acknowledges, he did not object to this testimony at trial, leaving this issue unpreserved. We review unpreserved claims of evidentiary error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999).

Hearsay, which is a statement other than one made by the declarant while testifying at the trial or hearing offered to prove the truth of the matter asserted, is inadmissible at trial unless there is a specific exception allowing its introduction. See MRE 801 and MRE 802. MRE 803(4) provides an exception for

> [s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

"[S]upporting rationale[s] for MRE 803(4) are the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992). "Particularly in cases of sexual assault," "a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011). Further, "the identification of the assailant is necessary to adequate diagnosis and treatment." *Meeboer (After Remand)*, 439 Mich at 322. Additionally, an injury need not be readily apparent because in cases of sexual assault, "the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all[.]" *Mahone*, 294 Mich App at 215.

The record supports that MC's statements to the ER doctor were reasonably necessary for her diagnosis and treatment. MC's mother brought her to a hospital emergency room because of a complaint of rectal pain and suspected sexual abuse. This doctor was the first person to examine MC and take her medical history. The police investigation occurred after, and separate from, the doctor's actions. The doctor explained that a "history" is "the most important part" in

terms of allowing him to properly be able to determine "what the problem is." Based on information provided by MC, the doctor gave her a physical that included external genitalia and rectum examinations. Thus, he tailored MC's examination to her description of the events that led her mother to seek treatment for her. After the examination, the doctor provided discharge instructions and referred MC for a Sexual Assault Nurse Examiners examination. MC's statements to the doctor were reasonably necessary for her diagnosis and treatment, especially because of the sometimes latent nature of sexual-abuse injuries. *Id*.

Defendant suggests that because of MC's young age, the statements were inadmissible. As noted in *People v Duenaz*, 306 Mich App 85, 95; 854 NW2d 531 (2014), "statements [a] child makes may be admitted under [MRE 803(4)] when the totality of circumstances surrounding the statements supports that they are trustworthy." To determine whether a child victim's statements to a medical professional are trustworthy, this Court reviews those statements in light of the relevant factors listed in *Meeboer (After Remand)*, 439 Mich at 324-325:

> (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [Citations omitted.]

The *Meeboer* Court noted that "evidence that the person identified as the assailant had the opportunity to commit the assault" can also "support the trustworthiness of the child's statements regarding a sexual assault and aid in the determination whether the statement was made for the purpose of receiving medical care." *Id*. at 326.

MC was five years old when she was examined, and her statements described the circumstances of the sexual assault. There was no evidence that the doctor used leading questions during the examination. MC used childlike euphemisms for genital and anal areas, relaying that her uncle put his "wee-wee" "into her bottom." The examination was not initiated by the prosecution, but rather by MC's mother almost immediately after the assault was first disclosed and took place more than a year before trial. Although the examination was weeks after the alleged assault, MC was still suffering pain in her "bottom." The doctor gave MC a basic physical that "entail[ed] a head to toe examination[.]" Thus, the examination was not psychological. MC identified the assailant as her uncle, whom she saw often and who had the opportunity to commit the assault. No evidence was presented that MC had a motive to fabricate her statements. The family was very close and MC and her siblings visited their grandmother numerous days each month before this incident. After a review of the relevant factors, the

-5-

totality of the circumstances supports that MC's statements to the doctor were trustworthy. Because the statements qualify as admissible under MRE 803(4), their admission at trial court was not plain error.

## III. PREJUDICIAL TESTIMONY

Defendant also argues that the trial court erred by denying his motion for a mistrial after Det. Twardesky remarked in his testimony that defendant stated during his interview that he was capable of doing anything when he was drunk, "including shooting a cop." We disagree.

Defendant participated in two police interviews with Det. Twardesky. The trial court apparently ruled that the second interview was inadmissible. The prosecutor questioned Det. Twardesky about only the first interview. Subsequently, during defense counsel's cross-examination of the detective, defense counsel brought up the second interview. Then, during the prosecutor's redirect examination of the detective, the following exchange occurred:

> *Q.* [Defense counsel] asked you about that second interview on Monday.
>
> *A.* Yes, sir.
>
> *Q.* And it was discussed, you indicated that the—something about what the defendant could do when he's drunk.
>
> *A.* He said he was capable of anything.
>
> *Q. Did he give you any examples?*
>
> *A. Including shooting a cop.*
>
> * * *
>
> *Defense counsel*: Judge, may we approach. I have an objection.
>
> (At about 1:53 p.m., Discussion Side Bar)
>
> *The court*: All right. You're not to consider the last question and answer. Disregard it.
>
> Move on to a new topic, [prosecutor]. [Emphasis added.]

As previously mentioned, a mistrial should be granted only "when the prejudicial effect can be removed in no other way." *Gonzales*, 193 Mich App at 266. Defendant's complaint considers only Det. Twardesky's response that defendant said he was capable of shooting a cop when he was drunk. Defendant fails to also mention that the trial court instructed the jury to disregard this response and to not consider the question and answer. In its final instructions, the trial court reminded the jury that it took an oath to decide the case based only on the properly-admitted evidence and the law as instructed by the court, and to not consider any evidence that was "excluded or stricken" during trial. Jurors are presumed to have followed their instructions,

*People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011), "and instructions are presumed to cure most errors," *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Because the trial court struck the challenged testimony and instructed the jury not to consider it, defendant has not made an affirmative showing of prejudice so as to warrant a mistrial.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

Lastly, we reject defendant's argument that he was denied the effective assistance of counsel because defense counsel failed to object to the hearsay testimony discussed in section II, *supra*. Because defendant did not raise a claim of ineffective assistance of counsel in the trial court, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). As previously discussed, the testimony was admissible under MRE 803(4) because MC's statements were made for purposes of medical treatment or diagnoses. Because the challenged evidence was admissible, defendant cannot establish that defense counsel was ineffective for failing to object. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Patrick M. Meter