PEOPLE v POLLICK

Docket No. 99608. Decided April 12, 1995. On application by the people for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals and reinstated the judgment of the circuit court.

David M. Pollick was convicted by a jury in the Oakland Circuit Court, Steven N. Andrews, J., of assault with intent to murder as a result of deliberately driving an automobile across the center line of a road and colliding with an oncoming car, seriously injuring the driver. The Court of Appeals, GRIBBS, P.J., and D. E. HOLBROOK, JR., and J. D. PAYANT, JJ., reversed in an unpublished opinion per curiam, finding that the circuit court had improperly instructed the jury (Docket No. 136826). The people seek leave to appeal.

In an opinion per curiam, signed by Chief Justice BRICKLEY, and Justices CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, the Supreme Court *held:*

Considering the timing and full content of the instructions, there was no significant possibility that the jury found the court's instruction to be unduly coercive.

There is a greater coercive potential when an instruction is given to a jury that already believes itself deadlocked than to a jury that has not yet begun to deliberate. In this case, the instruction preceded the jury's deliberations, and thus the coercive potential was reduced. The jury's deliberations were brief, and it did not choose any of the intermediate verdicts that were offered.

The failure of the defendant to object to the instruction serves as a waiver of any error in that regard. In this case, the record indicates that defense counsel was satisfied with the instructions as given.

Justice LEVIN concurred in the result only.

Reversed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Joyce F. Todd,* Chief, Appellate

Division, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Richard B. Ginsberg*) for the defendant.

PER CURIAM. The defendant was convicted of assault with intent to murder, but the Court of Appeals reversed the conviction on the ground that the circuit court improperly instructed the jury. We reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

I

In late 1989, defendant David Pollick was in the second year of a relationship with a woman named Danyeil Lewis. They were arguing, and Ms. Lewis had indicated her desire to end the relationship.

On November 17, 1989, the defendant delivered a lengthy letter to Ms. Lewis. In an effort to persuade her to continue the relationship, he wrote that he would kill himself by driving an automobile across the center line. In this manner, he would take not only his own life, but also the life of someone else.

After receiving the letter, Ms. Lewis went to the home of a person who lived on Rochester Road in Oakland County. The defendant soon came to the Rochester Road house and borrowed Ms. Lewis' car. A few minutes later, the defendant telephoned Ms. Lewis to say that there would be an accident in front of the house on Rochester Road within ten minutes.

As promised, the defendant drove south on Rochester Road, crossed the center line, and collided with an oncoming car approximately two hundred feet from the house where Ms. Lewis was

staying.[1] The driver of the other car was seriously injured. The accident occurred within two hours of the time the defendant delivered the letter to Ms. Lewis.

The defendant was charged with assault with intent to murder. MCL 750.83; MSA 28.278. During the jury trial of this matter, the defendant acknowledged that he had stated his intention to commit suicide, but denied intending to harm anyone else.[2]

The jury was instructed on the charged offense of assault with intent to murder, as well as the lesser offenses of assault with intent to commit great bodily harm less than murder,[3] and assault with a dangerous weapon.[4] After deliberating thirty-nine minutes, the jury found the defendant guilty of assault with intent to murder.

The circuit court sentenced the defendant to serve 10 to 20 years in prison. Following a remand in the Court of Appeals, the circuit court denied the defendant's motion for new trial.[5]

The Court of Appeals reversed the defendant's conviction on the ground that the circuit court had improperly instructed the jury.[6] The prosecutor has applied for leave to appeal.[7]

---

[1] At this point on Rochester Road, the speed limit is 55 miles per hour.

[2] The letter could not be produced at trial, so the witnesses testified regarding their recollections of its contents.

[3] MCL 750.84; MSA 28.279.

[4] MCL 750.82; MSA 28.277.

[5] The motion and the remand proceedings did not concern the issue that is discussed in this opinion.

[6] Unpublished opinion per curiam of the Court of Appeals, issued April 25, 1994 (Docket No. 136826).

[7] The defendant has also filed an application for leave to appeal as cross-appellant. We deny the defendant's application because we are not persuaded that the questions presented should be reviewed by this Court.

II

After explaining the elements of the assault offenses, the circuit court instructed the jury regarding how it was to conduct its deliberations. Defense counsel did not object when the court told the jury:

> You should give [this case] your most careful consideration. You must not decide this case by reason of sympathy, fear or prejudice. You must not be influenced by any of those emotions, but solely by a sense of justice and your obligations under your oaths. Take the evidence, and weigh it conscientiously, carefully and thoroughly.
>
> If you are satisfied beyond a reasonable doubt, and to a moral certainty that the People have proven their case as the Court has defined it for you, you may find the defendant guilty of Assault With Intent to Commit Murder.
>
> If you fail to convict or acquit, or are unable to agree whether to convict or acquit on that offense, you may then consider the lesser included offenses of Assault With Intent to do Great Bodily Harm Less Than Murder or Felonious Assault.
>
> If you are not satisfied beyond a reasonable doubt and to a moral certainty that the People have proven their case as the Court has defined it for you, you must find the defendant not guilty of all charges.
>
> Take the case under advisement, members of the jury, and do your duty under your oaths. You have nothing to do in this case but determine the guilt or innocence of the defendant. You are the sole judges of the facts. The Court has given you the law, but you are absolute in the ream [sic, realm?] of fact. You must, as I said, consider all of the evidence. Do not go outside the evidence, but take what has been offered, the competent evidence in the case.
>
> Now, there are four possible verdicts. You may find the defendant:

Guilty of Assault With Intent to Commit Murder; or

Guilty of Assault With Intent to do Great Bodily Harm Less Than Murder; or

Guilty of Felonious Assault; or

Not Guilty.

Your first duty upon retiring is to select a foreperson.

*Your second duty is to agree upon a unanimous verdict.* [Emphasis supplied.]

As noted above, the Court of Appeals reversed the defendant's conviction. It did so on the ground that the concluding statement ("Your second duty is to agree upon a unanimous verdict") was a substantial departure from a jury instruction that this Court approved in *People v Goldsmith,* 411 Mich 555; 309 NW2d 182 (1981), and *People v Hardin,* 421 Mich 296; 365 NW2d 101 (1984).[8] The Court of Appeals explained:

Reversal is required because the trial court instructed the jury in this case that it had a duty to reach a unanimous verdict. *People v Goldsmith,* 411 Mich 555; 309 NW2d 182 (1981); *People v Davis,* 135 Mich App 602; 354 NW2d 274 (1984). The instruction given here was a substantial departure from ABA standard jury instruction 5.4 approved in *Goldsmith, supra,* and *People v Hardin,* 421 Mich 296; 365 NW2d 101 (1984). Here, the jury was informed at the beginning of the instruction that it was their "job" to decide the case,[9] that they "must decide," and that it was their "duty to agree upon a unanimous verdict." They were not instructed concerning what they should

---

[8] The Court of Appeals rejected the defendant's other claims of error, saying that, "[a]lthough defendant raises several issues on appeal, only one has merit" and that "none of the [other] errors complained of would have warranted reversal . . . ."

[9] At the beginning of its instructions to the jury, the circuit court twice told the jury that its "job" was to decide the facts of the case.

do if they failed to agree or told that no juror should surrender his or her honest conviction or belief solely for the purpose of obtaining a unanimous agreement. We conclude that the instruction given here was a substantial departure and, accordingly, reversal is required.

### III

In *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974), the circuit court gave a so-called *Allen*[10] charge to a jury that apparently was deadlocked. While finding the instruction neither coercive per se nor coercive in the situation that arose in *Sullivan,* this Court adopted the American Bar Association's Minimum Standard for Criminal Justice 5.4. *Id.* at 341-342. Here is the current version of that ABA standard:[11]

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto:

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with the other jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his or her own

[10] *Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).

[11] The material presented in the text is Standard 15-4.4 of the American Bar Association Standards for Criminal Justice (2d ed), p 133. The current standard reflects only stylistic changes in the original ABA Standard 5.4.

views and change an opinion if the juror is convinced it is erroneous; and

(v) that no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in paragraph (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

This Court concluded its *Sullivan* opinion by saying that "prospectively from the date of this opinion, the ABA standard jury instruction 5.4 as set forth herein is adopted by this Court," and that "[a]ny substantial departure therefrom shall be grounds for reversible error."[12] 392 Mich 342.

In *Goldsmith,* the circuit court added the following paragraph to a proper instruction that was given before the jury began deliberating:

"Let me remind you that when a jury is unable to reach a verdict, the jury has not accomplished its purpose. A jury unable to agree, therefore, is a jury which has failed in its purpose. Each time such an indecisive jury fails, ammunition is given to those who oppose the jury system as we know it, a system that requires a unanimous vote of all 12 jurors for either conviction or acquittal. As you deliberate, please bear this in mind." [411 Mich 558.]

---

[12] The ABA's model instruction is now incorporated in CJI2d 3.11. The earlier version was CJI 3:1:18. As adapted for a deadlocked jury, the instruction is stated in CJI2d 3.12 and CJI 3:1:18A.

This Court characterized that addition as "a substantial departure" from the approved instruction:

> In *Sullivan,* this Court indicated that substantial departures from the ABA standard instruction would be reversible error.
>
> We conclude that the instruction given in the instant case was a substantial departure. Part of the instruction given in this case is essentially a call for the jury, as part of its civic duty, to reach a unanimous verdict and contains the message that a failure to reach a verdict constitutes a failure of purpose. Nothing in the standard instruction sanctions such a charge and we conclude that the giving of such an instruction was reversible error. [411 Mich 560-561.]

*Hardin* concerned several instructions that were given on the day after a jury began deliberating. Before analyzing the particular language employed in *Hardin,* this Court emphasized that the test for determining whether instructional language substantially departs from the ABA standard is whether the instruction is unduly coercive, not whether the circuit court used words that match the words in the ABA standard:

> This Court simply stated that any substantial departure from ABA standard jury instruction 5.4 "shall be grounds for reversible error." Our adoption of ABA standard 5.4 was not designed to create or promote an appellate exercise in semantic comparison as to whether the syntax and language of a given instruction comports with that of ABA standard 5.4. The significance of a "substantial *departure*"—i.e., one which is grounds for reversible error—is not just a difference in language, style, or syntax. The significance of a "substantial departure" is the risk that the resultant instruction will be more coercive than the ABA instruction. The test for determining whether a departure

from ABA standard 5.4 is substantial cannot rest simply on a gross difference in language. The instruction that departs from ABA standard 5.4 must also have an undue tendency of coercion— e.g., could the instruction given cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement?

Thus, coercion is at the very heart of the inquiry of whether a departure from ABA standard jury instruction 5.4 is a "substantial departure." Any other meaning would require appellate courts to devote their time and energy to an exercise in proofreading without regard to whether the instruction given was fair or unfair. In fact, we have not yet considered whether ABA standard jury instruction 5.4, if applied strictly, would be coercive under certain circumstances. As we noted in *People v Sullivan,* to determine whether the *Allen* instruction was a coercive influence on the jury, the charge must be examined in the factual context in which it is given.

\* \* \*

Whether any deviation from ABA standard jury instruction 5.4 is substantial in the sense that reversal is required depends upon whether the deviation renders the instruction unfair because it might have been unduly coercive. There can be no doubt, therefore, that coercion is a relevant inquiry in determining whether the departure was substantial. To reiterate what we stated in *People v Sullivan,* "The optimal instruction will generate discussion directed towards the resolution of the case but will avoid forcing a decision. If the instruction given 'can cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement,' then that charge should not be used." 392 Mich 334. Also relevant is whether the court required, or threatened to require, the jury to deliberate for an unreasonable length of time or for unreasonable intervals. ABA standard jury instruction 5.4(b). In

addition, as we noted in *People v Goldsmith,* a case concerning a *Sullivan* instruction given as part of the main charge to the jury, an instruction that calls for the jury, as part of its civic duty, to reach a unanimous verdict and which contains the message that the failure to reach a verdict constitutes a failure of purpose, is a substantial departure, but the reason it is, is because it tends to be coercive. *People v Goldsmith,* 411 Mich 561. [421 Mich 314-316. Emphasis in original.]

Applying those principles to the instructions given in *Hardin,* this Court reinstated the defendant's convictions.

### IV

It requires no special insight to see that there is a greater coercive potential when an instruction is given to a jury that already believes itself deadlocked. Instructions given to a jury that has not yet begun to deliberate are less likely to weigh on a dissenting juror, or to be understood as a request that a particular dissenting juror abandon the view that is preventing an otherwise unanimous jury from reaching its verdict.[13]

In the present case, the instruction preceded the jury's deliberations, and thus the coercive potential was reduced. Further, this case does not involve any improvidently added language, such as was found in *Goldsmith.* Indeed, the challenged instruction—that the jury had a "duty" to return a unanimous verdict—would be entirely unre-

---

[13] In *Sullivan,* this Court addressed a situation in which a jury had been deliberating for several days without being able to return a verdict. *Hardin* likewise concerned instructions that were given to a jury that had been deliberating for some length of time. Of the cases discussed in the preceding pages, only *Goldsmith* focused on an instruction given to a jury before it began deliberating.

markable[14] if this Court had not adopted in *Sulli-van* a prophylactic rule designed to cure a problem that did not even arise in the present case. Probably for that reason, there was no objection from defense counsel.

We said in *Sullivan* that courts are to give an instruction that is substantially in the form of CJI2d 3.11. That is a sound instruction, and we continue to direct that it be given. However, the teaching of *Hardin* is that an instruction on this subject requires reversal only if it has an "undue tendency of coercion," not if it merely fails to contain the same words as the ABA standard.

In the context of this case, considering the timing and full content of the instructions, we see no significant possibility that the jury found the instruction to be unduly coercive.[15] The whole jurisprudence of *Sullivan,* including the cases and instructions that followed, is based on the need to avoid coercing jurors who are having a difficult time reaching a decision. Here, no such problem had arisen at the time of the instruction, nor did the jurors ever experience such a difficulty. Their deliberations were brief, and they did not choose any of the intermediate verdicts that were offered.

V

Further, *Hardin* explains that the failure of the defendant to object to the instruction serves as a waiver of any error in that regard.

---

[14] In a split opinion, this Court held in *People v Burden,* 395 Mich 462; 236 NW2d 505 (1975), that a jury should be instructed regarding its obligation to return a unanimous verdict.

[15] More bluntly, the prosecuting attorney writes, "Only a juror who was a hopeless moron could believe that the trial judge was ordering the jury to agree on a verdict even when they didn't believe one was warranted."

We note, in passing, that the defendant herein did not object, on the record, to the additional instructions given by the trial court. Indeed, after the first instruction, which included ABA standard jury instruction 5.4, the court asked for objections, and received none from the prosecutor, from defendant Thomas' attorney, or from defendant Hardin's attorney. Admittedly, in *People v Goldsmith, supra,* we decided a case where no objection was posed to the contested portion of the jury charge. 411 Mich 558. That notwithstanding, GCR 1963, 516.2 is clear in its mandate: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection." MCR 2.516(C) is equally as plain: "A party may assign as error the giving of or the failure to give an instruction only if the party objects on the record before the jury retires to consider the verdict *(or, in the case of instructions given after deliberations have begun, before the jury resumes deliberations),* stating specifically the matter to which the party objects and the grounds for the objection." (Emphasis supplied.) We do not approve a procedure whereby counsel may "sit back and harbor error to be used as an appellate parachute in the event of jury failure." *People v Brocato,* 17 Mich App 277, 305; 169 NW2d 483 (1969); *People v Allen,* 102 Mich App 655, 661; 302 NW2d 268 (1981), lv den 411 Mich 870 (1981). Our sister state of Indiana recently refused to review an issue concerning an *Allen*-type charge where counsel failed to lodge a specific objection. Since the defendant did not object at the time the instruction was given, he waived any error in that regard. *Napier v Indiana,* 445 NE2d 1361 (Ind, 1983). In future cases, we will expect compliance with the court rule. [*Hardin* at 322-323.]

In this case, the record indicates that defense

counsel stated, "I'm satisfied with the instructions as given." Thus any error was waived.[16]

### VI

For these reasons, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

BRICKLEY, C.J., and CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred.

LEVIN, J., concurred in the result only.

[16] The failure to object does not represent ineffective assistance of counsel because, for the reasons explained in part IV of this opinion, the disputed instruction would not provide a basis for reversal even if there had been an objection.