# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

 Plaintiff-Appellee,

UNPUBLISHED
October 20, 2015

v

MARQUESE BRYANT MCCRAY,

No. 321344
Oakland Circuit Court
LC No. 2013-245059-FC

 Defendant-Appellant.

PEOPLE OF THE STATE OF MICHIGAN,

 Plaintiff-Appellee,

v

JAMES VERDELL WATKINS,

No. 321772
Oakland Circuit Court
LC No. 2013-245062-FC

 Defendant-Appellant.

Before: FORT HOOD, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendants Marquese McCray and James Watkins were tried jointly, before separate juries. In LC No. 2013-245059-FC, a jury convicted defendant McCray of first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. In LC No. 2013-245062-FC, a separate jury convicted defendant Watkins of armed robbery, but acquitted him on the charge of felony-murder. The trial court sentenced McCray to life imprisonment without parole for the felony murder conviction, 23 to 60 years' imprisonment for the armed robbery conviction, and two years' imprisonment for each felony-firearm conviction. The trial court sentenced Watkins to 15 to 60 years' imprisonment for his armed robbery conviction. Both defendants appeal as of right. In Docket No. 321344, we affirm defendant McCray's convictions. In Docket No. 321722, we affirm defendant Watkins's convictions, but remand for further proceedings consistent with this opinion.

-1-

Defendants' convictions arise from the robbery and shooting death of Donnie Clark on November 1, 2012, in Pontiac. According to witness testimony, which was supported by video footage from several locations, the two defendants robbed 51-year-old Clark of between $600 and $700 after he cashed a government check. Clark was shot at least four times during the robbery. Eyewitness testimony linked both defendants to the victim before he cashed his government check and during the actual robbery, and the evidence pointed to McCray as the person who shot and robbed the victim while Watkins stood nearby. The prosecution also presented evidence that McCray was in possession of a large sum of money shortly after the offense was committed, and that McCray admitted to his girlfriend that he had killed someone during a robbery.

## I. DOCKET NO. 321344 (DEFENDANT MCCRAY)

McCray first argues that he is entitled to a new trial because the investigating officer impermissibly invaded the province of the jury by identifying McCray and describing his actions in surveillance video footage played at trial. We disagree that McCray is entitled to a new trial on this basis. McCray concedes that he failed to object to this claim of error at trial. Accordingly, we review for plain error affecting defendant's substantial rights, which requires a showing that "the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Lay opinion testimony, such as that at issue here, is permitted pursuant to MRE 701 provided the opinions or inferences are limited to those "(a) rationally based on the perception of the witness, [and] (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue[.]" MRE 701. In *People v Fomby*, 300 Mich App 46; 831 NW2d 887 (2013), this Court considered whether a certified video forensic technician could comment on video evidence and determined the testimony was "properly admitted as lay opinion testimony under MRE 701." *Id.* at 48, 50. However, a lay witness "cannot express an opinion on the defendant's guilt or innocence of the charged offense." *Id.* at 53 (citation omitted).

Defendant objects to the investigating officer's testimony describing McCray's actions in the surveillance video and the officer's identification of McCray in the video. We disagree that the officer's depiction of the events in the video was improper. The testimony was rationally based on the officer's perception of the video, and helpful to the jury's understanding of the evidence. MRE 701. However, the issue of whether a defendant is the same person depicted in surveillance video footage is generally a determination properly left to the jury when the witness is in no better position than the jury to identify a defendant in the video. See *Fomby*, 300 Mich App at 52-53. Thus, we agree that the officer improperly identified McCray in the video.

However, McCray cannot show that this error affected his substantial rights. Significantly, McCray's identity as the person depicted in the video at issue was not seriously disputed at the time of the officer's testimony. As noted by the prosecution, McCray never disputed that he was present during the robbery and shooting. Rather, his theory was that Watkins was the principal behind the crimes. In addition, the primary purpose of the officer's testimony was to explain the events depicted, not to establish the defendants' identities. The prosecutor prefaced the officer's testimony by pointing out that previous witness testimony had established defendants' identities in the video. The officer's identification testimony was brief,

and the officer admitted that the video did not clearly depict the identities of the individuals in the video. Finally, McCray's identification was not dependent on the officer's testimony because the evidence against McCray was overwhelming. By the time of the officer's testimony, which was presented near the end of the prosecution's case, there was substantial testimony linking McCray to the victim and the crime. The evidence included additional unchallenged video footage, eyewitness testimony linking both defendants to the victim shortly before the robbery, an eyewitness's testimony identifying a person who matched McCray's description as the person pointing the gun at the victim, another eyewitness's testimony also identifying a person matching McCray's description as the person holding and firing the gun and then removing something from the victim's body, a witness's testimony that McCray was in possession of a large amount of money when McCray appeared at the witness's house shortly after the offense was committed, and the testimony of McCray's girlfriend, who stated that McCray admitted that he had killed someone during a robbery. In light of this evidence, any error related to the investigating officer's testimony did not affect the outcome of the trial and, accordingly, did not affect McCray's substantial rights. *Carines*, 460 Mich at 763.

McCray next argues that he is entitled to a new trial because his due process right to confront witnesses was violated when prejudicial, hearsay evidence was admitted against him and the declarant failed to testify. We disagree that McCray is entitled to a new trial for this reason. Generally, we review constitutional issues de novo. *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552 (2011). However, McCray admittedly failed to object to the claimed error at trial. Thus, we review for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

At trial, the investigating officer testified that when he went to speak with a testifying witness who met defendants shortly after the robbery, he also spoke with the witness' non-testifying mother, who not only stated that two men had visited the home, but identified McCray as one of those men from a photograph. McCray argues that the non-testifying witness's statements were inadmissible hearsay and violated his constitutional right to confrontation.

Hearsay is an "extrajudicial statement offered into evidence to prove the truth of the matter asserted." *People v McLaughlin*, 258 Mich App 635, 651; 672 NW2d 860 (2003); MRE 801(c). "Hearsay evidence is not admissible except as provided by the rules of evidence." *McLaughlin*, 258 Mich App at 651; MRE 802. "Controversies over the admission of hearsay statements may also implicate the Confrontation Clause, US Const Am VI, which guarantees a criminal defendant the right to confront the witnesses against him or her. See also Const 1963, art 1, § 20." *People v Dendel*, 289 Mich App 445, 452-453; 797 NW2d 645 (2010). The Confrontation Clause prohibits the admission of out-of-court testimonial statements unless the declarant is unavailable at trial and the defendant had a prior opportunity for cross-examination. *Id.*, citing *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

Here, we agree with McCray that error occurred. The officer's testimony was inadmissible hearsay, and the non-testifying declarant did not testify. We reject the prosecution's claim that the evidence was not admitted to show the truth of the matter asserted. Statements not offered to prove the truth of the matter asserted are not considered hearsay, and, thus, not barred by the Confrontation Clause. *People v Chambers*, 277 Mich App 1, 10–11; 742 NW2d 610 (2007); MRE 801(c). The prosecution asserts that the evidence was presented to provide context to the officers' investigation of the crime. However, even if the evidence could

be viewed as providing motivation for the officer's next step in the investigation, we agree that the officer's testimony that the non-testifying witness positively identified McCray from his photograph was used for the truth of the matter asserted—namely, to show that McCray was the person identified as having been present in the home, a fact that was called into question during an earlier witness's testimony. Accordingly, the admission of this testimony constituted error.

However, again, this error did not affect McCray's substantial rights because there was no basis for concluding that it affected the outcome of the proceedings. *Carines*, 460 Mich at 763. The non-testifying witness did not possess or provide any information regarding the commission of the offense itself. Moreover, as previously discussed, the evidence against McCray was overwhelming, and included unchallenged video footage, eyewitness testimony linking McCray to the victim both before and during the offense, and McCray's admission that he had killed someone during a robbery. Accordingly, McCray is not entitled to relief.

## II. DOCKET NO. 321772 (DEFENDANT WATKINS)

Defendant Watkins argues that the trial court committed reversible error by failing to give the ABA standard deadlocked jury instruction, CJI2d 3.12, after the jury indicated that it was not able to reach unanimous decision on count 2, the armed robbery charge. Instead, after the court clarified that the jury had not yet reached a verdict with respect to count 1, it instructed the jury to "[k]eep deliberating." Because Watkins did not request the standard deadlocked jury instruction or object to the instruction given, this issue is unpreserved. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). We review an unpreserved claim of instructional error for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764; *People v Martin*, 271 Mich App 280, 353; 721 NW2d 815 (2006).

Our Supreme Court has sanctioned proper jury instructions governing juror deliberations and held that "substantial departures from the ABA standard instruction would be reversible error." *People v Pollick*, 448 Mich 376, 383; 531 NW2d 159 (1995) (internal quotation marks and citation omitted). See also *People v Sullivan*, 392 Mich 324, 220 NW2d 441 (1974). However, not all deviations are so substantial as to require a remedy. "[T]he test for determining whether instructional language substantially departs from the ABA standard is whether the instruction is unduly coercive, not whether the circuit court used words that match the words in the ABA standard[.]" *Pollick*, 448 Mich at 383. Thus, this Court should review the instruction and decide whether "the instruction given [could] cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement[.]" *Id*. at 384, quoting *People v Hardin*, 421 Mich 296, 314; 365 NW2d 101 (1984).

The supplemental jury instruction given in this case is almost identical to the instruction given to the jury of a codefendant in *People v France*, 436 Mich 138, 148, 165-166; 461 NW2d 621 (1990) (the jury was instructed to "[c]ontinue your deliberations."). In *France*, the Court held that this instruction did not "require or threaten to require the jury to deliberate for an unreasonable time or for unreasonable intervals," and, accordingly, did not constitute a substantial deviation from the ABA standard deadlocked jury instruction. *Id*. at 165-166. As in *France*, the trial court here did not threaten to require deliberations of unreasonable length, it did not suggest that the jurors had a civic duty to reach a verdict, and nothing in the court's response would cause a juror to abandon his or her dissent. See *id*.; see also *Pollick*, 448 Mich at 384-385.

Accordingly, Watkins has not shown plain error and, therefore, is not entitled to relief. In addition, we further reject Watkins's alternative claim that his defense counsel was ineffective for failing to object to the trial court's failure to give the ABA standard deadlocked jury instruction, see *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013), because counsel is not ineffective for failing to raise a meritless argument. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant Watkins next argues that he is entitled to resentencing because the trial court engaged in impermissible judicial fact-finding to score the sentencing guidelines, contrary to *Alleyne v United States*, 570 US___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). Because Watkins did not object to the scoring of the guidelines at sentencing on the basis of *Alleyne*, this issue is unpreserved and appellate review is limited to plain error affecting substantial rights.[1] *People v Lockridge*, ___ Mich ___, ___; ___ NW2d ___ (2015) (Docket No. 149073); slip op at 30.

In *Alleyne*, 133 S Ct at 2159, 2163, the United States Supreme Court held that because "mandatory minimum sentences increase the penalty for a crime," any fact that increases the mandatory minimum is an "element" that must "be submitted to the jury and found beyond a reasonable doubt." In *Lockridge*, ___ Mich at ___; slip op at 1-2, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient under *Alleyne* to the extent that "the guidelines *require* judicial fact-findings beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e. the 'mandatory minimum' sentence under *Alleyne*." To remedy the constitutional violation, the Court severed MCL 769.34(2) to the extent that it makes the sentencing guidelines, as scored based on facts beyond those admitted by the defendant or found by the jury, mandatory. *Id.* at ___; slip op at 3. The Court explained that a sentencing court must still score the guidelines to determine the applicable guidelines range, but a guidelines range calculated in violation *Alleyne* is now advisory only. *Id.* at ___; slip op at 3.

Watkins received a total of 145 offense variable points, placing him in OV Level VI (100+ points) on the applicable sentencing grid. MCL 777.62. This guidelines range was based on the scoring of OVs 1, 2, 3, and 10. The trial court scored 25 points for OV 1 (firearm discharged at or toward a human being), MCL 777.31(1)(a), 5 points for OV 2 (offender used a pistol, rifle, or shotgun), MCL 777.32(1)(d), 100 points for OV 3 (a victim was killed), MCL 777.33(1), and 15 points for OV 10 (exploitation of a vulnerable victim and predatory conduct was involved), MCL 777.40(10(a). Pursuant to the relevant statutes, OsV 1, 2, and 3 provide that in multiple offender situations, if one offender is assessed points for an OV, all offenders

---

[1] We disagree with plaintiff's argument that defense counsel affirmatively waived this issue by conceding at sentencing that the guidelines were properly scored. "Waiver has been defined as the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144, 148 (2000) (citation and internal quotations omitted). While counsel's concession may be viewed as having waived any claim challenging whether the offense variables were supported by a preponderance of the evidence, we do not agree that his statements likewise constituted an admission relating to Watkins's constitutional rights pursuant to *Alleyne*.

shall be assessed the same number of points. MCL 777.31(2)(b); MCL 777.32(2); MCL 777.33(2)(a). Accordingly, the sentencing court scored these variables consistent with how they were scored in codefendant McCray's case.

However, because Watkins was acquitted of felony murder by a separate jury, and his jury did not make the necessary findings to support the scored OVs, the scoring of these variables may not be upheld on the basis of facts found by the jury. Further, Watkins made no admissions sufficient to establish these variables. Therefore, the "facts admitted by defendant or found by the jury verdict were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he [] was sentenced[,]" resulting in a violation of defendant's Sixth Amendment rights. *Lockridge*, ___ Mich at ___; slip op at 32. This violation constitutes plain error, as Watkins's sentence was not subject to an upward departure. *Id*. at __; slip op at 32-33. The *Lockridge* Court explained that the appropriate remedy is a *Crosby*[2] remand to the trial court for a determination whether the court would have imposed a materially different sentence but for the constitutional error. *Id*. at ___; slip op at 34. "If the trial court determines that the answer to that question is yes, the court shall order resentencing." *Id*. at ___; slip op at 34.

In Docket No. 321344, we affirm defendant McCray's convictions. In Docket No. 321772, we affirm defendant Watkins's convictions, but remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

---

[2] *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005).