*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TYLER ALLEN SALE,

Defendant-Appellant.

UNPUBLISHED
March 17, 2022

No. 355540
Ottawa Circuit Court
LC No. 19-043252-FC

Before: CAVANAGH, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions on two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (sexual penetration with a victim less than 13 years of age by a defendant over 17 years of age). We affirm.

## I. FACTUAL BACKGROUND

After a two-day jury trial and approximately a day and a half of deliberations, defendant was convicted of two counts of CSC-I for sexually assaulting the 12-year-old victim, JC. On appeal, defendant argues that (1) the trial court's off-script deadlock jury instructions were unduly coercive, and (2) the trial court improperly excluded testimony under MRE 608(b). We disagree.

## II. PRESERVATION AND STANDARD OF REVIEW

As a threshold matter, although the prosecution argues the deadlocked-jury instruction issue is unpreserved because it was raised the day after the jury instructions were given, we conclude that this issue is preserved. "In order to properly preserve an issue for appeal, a defendant must raise objections at a time when the trial court has an opportunity to correct the error." *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006) (quotation marks and citation omitted). The trial court gave its instructions to the deadlocked jury at 5:18 p.m. on the third day of trial and defendant first objected, according to the record, at 11:30 a.m. the next morning, after the jury had begun deliberating at 8:30 a.m. Because defendant moved for a mistrial, and objected on the record while the jury was still deliberating, the trial court had the opportunity to correct the error. Thus,

this issue is preserved for appeal.[1]  See *id*.  This Court reviews de novo claims of instructional error.  *People v Walker*, 504 Mich 267, 276; 934 NW2d 727 (2019) (citation omitted).

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion.  The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes."  *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019) (quotation marks and citations omitted).  Preliminary questions of law regarding the admission of evidence, "such as whether a rule of evidence bars admitting it[,]" are reviewed de novo.  *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014).

## III.  DEADLOCKED-JURY INSTRUCTIONS

Defendant argues that the trial court made statements that did not conform with the standard deadlocked-jury instructions, and these off-script instructions constituted reversible error because they were unduly coercive.  We disagree.

The timeline of jury deliberations is essential to understanding whether the court committed reversible error.  The jury was excused to begin deliberations at 1:36 p.m. on the second day of trial.  The trial court received questions from the jury at 3:32 p.m. on the second day and was dismissed for the day at 5:18 p.m.  On the third day, the jury sent two more requests to the trial court during their full day of deliberation.  At 5:18 p.m. on the third day the jury indicated it was deadlocked.  The trial court responded with the following instructions:

> We are on the record and the jury is present.  Members of the jury, I have shared your communication with the attorneys and this is what we're going to do.  You have—we have an instruction and a process for this.  You've indicated that you cannot reach a unanimous verdict.
>
> You have returned from deliberations indicating that you believe you cannot reach a verdict.  Tomorrow I'm going to ask you to please return to the jury room and resume your deliberations in the hope that after further discussion, you'll be able to reach a verdict.  As you deliberate please keep in mind the guidelines I gave you earlier and, in addition, remember it is your duty to consult with your fellow jurors and try to reach agreement if you can do so without violating your own judgment.  To return a verdict, you must all agree and the verdict must represent the judgment of each of you.  As you deliberate, you should carefully and seriously consider the views of your fellow jurors.  Talk things out in a spirit of fairness and frankness.  Naturally, there will be differences of opinions.  You should not—you should each not only express your opinion, but also give the facts and reasons for which you base it.  By reasoning the matter out, jurors can often reach agreement.  If you think it would be helpful, you may submit to the bailiff a written list of the issues that are dividing or confusing you.  It will then be submitted to me.  I will attempt to clarify or amplify the instructions in order to assist you in your further

---

[1] The trial court also noted "[t]he objections are preserved."

deliberations. When you continue your deliberations tomorrow, do not hesitate to rethink your own views and change your opinion if you decide that you were wrong. However, none of you should give up your honest beliefs about the weight or effect of the evidence only because of what your fellow jurors think.[2]

You'll be given a copy of this instruction tomorrow. Each of you will do that. The reason why we give these instructions is it's natural that there's going to be differences of opinion. It's not unusual. You're a solid Ottawa County jury. If not you, then who? You are able to do this. It will require some reevaluations of your positions, all of you, and I would ask that you do this and come back tomorrow. I know that you are all taking this seriously. That's not the issue. But once again this is an issue that we have twelve citizens of our community coming together as a juror – as a jury and sometimes it's challenging. That's your task. None of you went into this thinking that it would be easy. Perhaps it's harder than what you could have possibly envisioned. That's our system. But I would ask that you – we will be breaking in just a few moments to go home. Take the night off from the stress. Enjoy your family life. Enjoy watching some hockey or whatever you watch on TV and come back tomorrow at 8:30. We'll start this process again. Again, if you have further questions that you think that you need to submit to me that might be dividing you, we'll look at it at that point in time. This is challenging. Challenging for everybody, but that's the process. Nobody said this would be easy. It's tough, but you can do this and I'm going to ask you to do that. So, you will reconvene in the jury room 3A tomorrow at 8:30 to once again begin your deliberations, but you'll be going home right now. That is all. Thank you.

There was no objection by defense counsel while the trial court gave these instructions to the jury. However, the next morning, defense counsel moved for a mistrial based on the off-script instructions given to the jury. Defendant's first issue on appeal is whether the trial court committed reversible error based on the content of its ad-lib remarks immediately after the deadlocked-jury instructions.

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "When a jury indicates it cannot reach a unanimous verdict, a trial court may give a supplemental instruction . . . to encourage the jury to continue deliberating." *Walker*, 504 Mich at 276-277. When a jury is deadlocked, there is greater potential for coercion because "at least one juror harbored doubt regarding defendant's guilt." *Id*. at 281.

In *People v Sullivan*, 392 Mich 324, 341; 220 NW2d 441 (1974), our Supreme Court adopted the American Bar Association (ABA) standard jury instruction 5.4, which has since been incorporated into our model jury instructions. *Walker*, 504 Mich at 277. Under M Crim JI 3.12, the standard deadlocked-jury instructions state:

---

[2] Defendant admits this paragraph complies with the standard deadlocked-jury instructions outlined in M Crim JI 3.12.

(1) You have returned from deliberations, indicating that you believe you cannot reach a verdict. I am going to ask you to please return to the jury room and resume your deliberations in the hope that after further discussion you will be able to reach a verdict. As you deliberate, please keep in mind the guidelines I gave you earlier.

(2) Remember, it is your duty to consult with your fellow jurors and try to reach agreement, if you can do so without violating your own judgment. To return a verdict, you must all agree, and the verdict must represent the judgment of each of you.

(3) As you deliberate, you should carefully and seriously consider the views of your fellow jurors. Talk things over in a spirit of fairness and frankness.

(4) Naturally, there will be differences of opinion. You should each not only express your opinion but also give the facts and the reasons on which you base it. By reasoning the matter out, jurors can often reach agreement.

(5) If you think it would be helpful, you may submit to the bailiff a written list of the issues that are dividing or confusing you. It will then be submitted to me. I will attempt to clarify or amplify the instructions in order to assist you in your further deliberations.

(6) When you continue your deliberations, do not hesitate to rethink your own views and change your opinion if you decide it was wrong.

(7) However, none of you should give up your honest beliefs about the weight or effect of the evidence only because of what your fellow jurors think or only for the sake of reaching agreement.

Substantial departure from the standard instructions is grounds for reversible error. *Sullivan*, 392 Mich at 342.

Defendant admits the trial court's first set of instructions complied with the standard deadlocked-jury instructions under M Crim JI 3.12. Defendant argues, however, the additional statements the trial court made immediately after were a substantial departure from the standard instruction because the statements "crossed the line from encouraging deliberation to instead impressing the need to reach unanimity."

"Where additional language contains no pressure, threats, embarrassing assertions, or other wording that would cause this Court to feel that it constituted coercion, that additional language rarely would constitute a substantial departure." *People v Hardin*, 421 Mich 296, 315; 365 NW2d 101 (1984) (quotation marks and citation omitted). In other words, the main concern with a trial court judge going "off-script" during deadlocked-jury instructions is the concern that the instructions will become coercive. "Whether any deviation from ABA standard jury instruction 5.4 is substantial in the sense that reversal is required depends upon whether deviation renders the instruction unfair because it might have been unduly coercive." *Id*. at 316. "If the instruction

-4-

given can cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement, then that charge should not be used." *Id*. (quotation marks and citation omitted).

Defendant argues that the trial court's nonconforming remarks were coercive because they suggested to the jury "the need for unanimity." First, defendant argues, the statement, "[y]ou're a solid Ottawa County jury" was an appeal to the jurors' civic duty and insinuated if the jurors did not reach a unanimous verdict, it would be a failure of their civic duty. Second, defendant argues the trial court's statement, "[i]f not you, then who?" implied the jurors were the only ones who could decide the case. Rather than being coercive, we conclude, the trial court's statements were words of encouragement, meant to inspire and compliment the jury. The trial court merely pointing out the fact that the jurors constituted a jury cannot be considered coercive language.

To contrast, in *People v Goldsmith*, 411 Mich 555, 558, 560; 309 NW2d 182 (1981), the trial court added the following statement to the proper jury instruction given before the jury began deliberating:

> Let me remind you that when a jury is unable to reach a verdict, the jury has not accomplished its purpose. A jury unable to agree, therefore, is a jury which has failed in its purpose. Each time such an indecisive jury fails, ammunition is given to those who oppose the jury system as we know it, a system that requires a unanimous vote of all 12 jurors for either conviction or acquittal. As you deliberate, please bear this in mind.

Our Supreme Court concluded that this instruction was a substantial departure because it called "for the jury, as part of its civic duty, to reach a unanimous verdict and contains the message that a failure to reach a verdict constitutes a failure of purpose." *Id*. at 561. The trial court in the present case did not indicate the failure to reach a unanimous verdict would be a failure of their purpose as a jury, and thus this was not a substantial departure from the standard instructions. Further, the statement "[i]f not you, then who?" does not suggest to the jurors "that failure to reach a verdict was not an option." *Walker*, 504 Mich 281.

In *Walker*, our Supreme Court found a trial court's ad-lib deadlocked-jury instructions were unduly coercive because the instructions "lacked constructive advice to encourage further deliberation, omitted important safeguards of jurors' honest convictions, included coercive language, and was delivered in a coercive atmosphere." *Walker*, 504 Mich at 272. In that case, the judge said twice, "that's not the way this works" when the jury announced it was deadlocked, which our Supreme Court considered "telegraphing that failure to reach a verdict was not an option." *Id*. at 281.

A claim of coercion is reviewed in context and on a case-by-case basis. *Sullivan*, 392 Mich at 331-332. An important piece of context in the present case is the fact that the standard instructions and the trial court's off-script remarks were given contemporaneously. Additionally, in this case, the coercive atmosphere created by the *Walker* trial court is not present. The trial court's instructions in this case did not lack constructive advice to encourage further deliberation and, because the standard instructions were given only moments before the ad-lib instructions, the necessary safeguards were communicated to the jury. Further, the atmosphere created by the trial

-5-

court in this case was not coercive or adversarial like in *Walker*. In *Walker*, the trial court encouraged the jurors to let the court know which jurors were refusing to follow instructions, which our Supreme Court found coercive. *Walker*, 504 Mich at 282, 285. There is nothing in this case to suggest a hostile courtroom atmosphere; the jury and trial court appeared to be cooperating with one another during communications back and forth after the jury asked for assistance and clarification.

Next, defendant argues the trial court's statement that further deliberations would "require some reevaluations of your positions, all of you" was also a substantial departure from the standard instructions. This is a departure from the standard jury instructions, which ask the jurors to "not hesitate rethinking" their views and opinions. M Crim JI 3.12(6). Although this statement used the word "require," which is absent in the standard instructions, encouraging cooperation between jurors during deliberation in this way is not a substantial enough departure to be considered coercive. "[A] departure is not 'substantial' solely because there is a gross difference in language, style, or syntax, or even content." *Hardin*, 421 Mich at 321. Here, the "overall effect of the instructions" was to encourage deliberation through cooperation and frankness, not to coerce the jury. *Id*.

Along with the coercive effect of the trial court's instructions, another relevant consideration is "whether the court required, or threatened to require, the jury to deliberate for an unreasonable length of time or for unreasonable intervals." *People v Pollick*, 448 Mich 376, 384; 531 NW2d 159 (1995). The trial court made no indication that the jury would be required to continue to deliberate for an unreasonable period of time. The trial court only stated that the jury would resume its deliberations at 8:30 the next morning.

In short, the trial court's contemporaneous off-script deadlocked-jury instructions do not contain the type of "undue pressure, threats, embarrassing assertions, or other wording that would tend to force a decision or cause a juror to abandon his conscientious dissent and defer to the majority." *Hardin*, 421 Mich at 321. Therefore, there is no evidence of the type of coercion that would require reversal.

## IV. EXCLUSION OF JC'S TESTIMONY ON CROSS-EXAMINATION

Defendant argues that he is entitled to a new trial because the trial court erred by excluding evidence that JC had previously given contradictory statements regarding an incident in which her father hit her. We disagree.

MRE 608(b) allows impeachment of a witness by specific instances of conduct that are probative of truthfulness:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

"MRE 608(b) provides that a witness may be questioned regarding prior specific instances of conduct on cross-examination, but only if the prior instances of conduct are probative of 'the witness' character for truthfulness or untruthfulness' . . . ." *People v Wilder*, 502 Mich 57, 63 n 7; 917 NW2d 276 (2018). However, "MRE 608(b) generally prohibits impeachment of a witness by extrinsic evidence regarding collateral, irrelevant, or immaterial matters[.]" *People v Spanke*, 254 Mich App 642, 644; 658 NW2d 504 (2003), overruled in part on other grounds by *People v Barrera*, 500 Mich 14, 22 (2017).

Prior false statements of a witness can be considered probative of untruthfulness. *People v Jackson*, 475 Mich 909, 910; 717 NW2d 871 (2006). Defendant's argument focuses on the "he-said she-said" nature of the case, which makes JC's credibility especially relevant. Defense counsel impeached JC with some inconsistencies between her trial testimony and her preliminary examination testimony. There were differences in the age JC stated she was when defendant assaulted her, a different description of the assault that took place in defendant's car, and JC used a false name to refer to a boy involved in a prior incident so he would not get in trouble.

Defendant argues that JC made a false statement to her volleyball coach when she said her father had "smacked" her and tore her eardrum, but when Child Protective Services (CPS) interviewed JC about the accusation, she stated her father hit her accidentally; thus, the trial court erred when it precluded defense counsel from asking questions regarding the statements in the presence of the jury. While defendant argues that statements testified about by JC during trial show an inconsistency, the trial court concluded that JC's testimony did not establish that JC lied. We agree. JC's testimony would have only established that she was inconsistent with respect to the severity of the hit from her father, i.e., a slap versus a harder strike, but JC's testimony was consistent that her father hit her. Thus, the statements did not establish a lie in that regard, and were not probative of JC's truthfulness. The trial court also voiced its concern that the court would have to "get into a now second trial over was there or was there not a lie" with respect to JC's description of how hard her father hit her. The inconsistency with respect to the severity of the hit would have only become clear to the jury through extrinsic evidence: the testimony of the CPS worker and the testimony of the volleyball coach. Because extrinsic evidence is barred under MRE 608(b), the trial court did not allow defendant to pursue this line of questioning in the jury's presence. See *Spanke*, 254 Mich App at 644. The trial court did not abuse its discretion in this regard.

However, even if the trial court did err in excluding this testimony, reversal would not be warranted. The proposed testimony's purpose was to show truthfulness—or lack thereof—which had already been presented in multiple ways during trial, and thus, the outcome would have likely been the same. "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome-determinative—i.e., that it undermined the reliability of the verdict." *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014) (quotation marks and citations omitted). Defendant argues that the jury would not have found defendant guilty had they known about the inconsistent statements by JC regarding the incident with her father. Because JC's

testimony was extensively impeached by defense counsel, it does not affirmatively appear that, more probably than not, the exclusion of this evidence was outcome-determinative.  See *id*.

     Affirmed.


               /s/ Mark J. Cavanagh
               /s/ Jane E. Markey
               /s/ Deborah A. Servitto