# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEANDRE MATHIS,

        Defendant-Appellant.

UNPUBLISHED
February 27, 2018

No.  335154
Wayne Circuit Court
LC No.  16-004090-01-FH

Before:  TALBOT, C.J., and METER and TUKEL, JJ.

PER CURIAM.

This case arises from the search of a stopped vehicle in Detroit on the evening of April 16, 2016, and the subsequent discovery of a loaded firearm underneath the seat defendant was occupying on the front passenger side of the vehicle.  A jury subsequently convicted defendant of carrying a concealed weapon in a motor vehicle (CCW), MCL 750.227(2).[1]  The trial court sentenced defendant, as a third habitual offender, MCL 769.11, to 34 months to 10 years' imprisonment for his CCW conviction.  Defendant appeals as of right.  We affirm defendant's conviction and sentence, vacate the late fee imposed against defendant for failure to timely pay costs, and remand for entry of a corrected judgment of sentence specifying a due date for the ordered costs and fees.

## I. THE DEADLOCKED JURY INSTRUCTION

Defendant argues on appeal that the trial court erred by providing an unduly coercive and nonstandard deadlocked jury instruction to the jury after the jury had indicated that it was not in agreement and sought instruction on how to proceed.  We disagree.

At trial, on the second day of jury deliberations, the jury returned to the court room with two notes.  The first note regarded a request to see police reports, which the trial court denied.

---

[1] Defendant was also charged with possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f.  However, the jury acquitted defendant of the felony-firearm and felon-in-possession charges.

-1-

The second note, submitted by the foreperson, stated, "We are not in agreement. What happens now?" The trial court instructed the jury as follows, "Well, it took you three days to try the case, right? I guess you can be three days in deliberations. Go back to the jury room and consider your verdict again." After the trial court gave its instruction, and after the jury was sent back, the trial court asked the parties if there were any objections or corrections to the instructions. Defense counsel stated, "None, judge," and the prosecutor stated, "No, your honor." The jury subsequently resumed deliberations and continued deliberating until the jury emerged with a verdict later that afternoon. Defendant was convicted of the CCW charge and acquitted of the felon-in-possession and felony-firearm charges.

The prosecution contends that defendant waived any objection to the trial court's supplemental jury instruction. "Waiver" is " 'the intentional relinquishment or abandonment of a known right.' " *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (citation omitted). " 'One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.' " *Id* (citation omitted). "Unlike waiver, forfeiture is 'the failure to make the timely assertion of a right.' " *Id*. at 504 n 27.

In this case, defendant did not waive objection to the trial court's supplemental instruction, but merely forfeited objection. Following the trial court's response to the jury's note, defense counsel simply stated, a single time, that he had no objection to the by-then already given instruction. The record does not reveal the trial judge discussing his planned response to the notes with counsel prior to giving that response or that the trial judge even revealed the contents of the notes. We review the entire record in order to determine whether or not a defendant waived an issue. *Id.* at 504 n 26. For example, in *Kowalski* our Supreme Court found waiver where defense counsel (1) discussed the instructions with the trial court, (2) affirmatively approved the instructions because he thought they were identical to his own proposed instructions, and (3) then reaffirmed his approval three more times. *Id*. "Thus, the record clearly demonstrates waiver—an intentional relinquishment of a known right—because counsel's affirmative statements were repeated, express and unequivocal and concerned instructions that counsel had more than ample time to fully review and consider." *Id*.

Here by contrast, there was no discussion with the trial court, either of the jury's question or of the trial judge's proposed response. Defense counsel never affirmatively approved the instruction, but merely, after it had been given, did not object to it. The non-objection occurred only a single time. Therefore, rather than a waiver, which would extinguish any claimed mistake, we review the appropriateness of the supplemental jury instruction for plain error affecting defendant's substantial rights. See *People v Grant*, 445 Mich 535, 552-554; 520 NW2d 123 (1994); see also *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999) (reaffirming *Grant*).

To satisfy the plain error test, defendant must show that an obvious or clear error occurred and that the error affected the outcome of the trial court proceedings. *Carines*, 460 Mich at 763-764. However, reversal is only warranted when the plain error results in the conviction of an "actually innocent defendant" or when an error "seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence." *Id*. (quotation marks and citation omitted).

Defendant contends that because the nonstandard deadlocked jury instruction failed to provide meaningful guidance to the jury, and because the instruction carried with it a scolding tone and an implied threat of prolonged deliberations, the instruction amounted to a substantial departure from the standard deadlocked jury instruction, M Crim JI 3.12, and thus was unduly coercive. We disagree.

In *People v Sullivan*, 392 Mich 324, 342; 220 NW2d 441 (1974), the Michigan Supreme Court adopted a standard deadlocked jury instruction devised by the American Bar Association and indicated that "[a]ny substantial departure therefrom shall be grounds for reversible error." Michigan has since incorporated the ABA standard into its model criminal jury instructions. *People v Pollick*, 448 Mich 376, 382 n 12; 531 NW2d 159 (1995) (referring to CJI2d 3.11 and CJI2d 3.12, which are now M Crim JI 3.11 and M Crim JI 3.12, respectively). M Crim JI 3.12 provides:

> (1) You have returned from deliberations, indicating that you believe you cannot reach a verdict. I am going to ask you to please return to the jury room and resume your deliberations in the hope that after further discussion you will be able to reach a verdict. As you deliberate, please keep in mind the guidelines I gave you earlier.

> (2) Remember, it is your duty to consult with your fellow jurors and try to reach agreement, if you can do so without violating your own judgment. To return a verdict, you must all agree, and the verdict must represent the judgment of each of you.

> (3) As you deliberate, you should carefully and seriously consider the views of your fellow jurors. Talk things over in a spirit of fairness and frankness.

> (4) Naturally, there will be differences of opinion. You should each not only express your opinion but also give the facts and the reasons on which you base it. By reasoning the matter out, jurors can often reach agreement.

> (5) If you think it would be helpful, you may submit to the bailiff a written list of the issues that are dividing or confusing you. It will then be submitted to me. I will attempt to clarify or amplify the instructions in order to assist you in your further deliberations.

> (6) When you continue your deliberations, do not hesitate to rethink your own views and change your opinion if you decide it was wrong.

> (7) However, none of you should give up your honest beliefs about the weight or effect of the evidence only because of what your fellow jurors think or only for the sake of reaching agreement.

The instruction note attendant to M Crim JI 3.12 states that the standard deadlocked jury instruction is "to be given when a jury returns from deliberation unable to reach a verdict."

Whether an instruction substantially departs from the standard deadlocked jury instruction depends on whether the instruction has an "undue tendency of coercion," which entails asking whether the given instruction could have "cause[d] a juror to abandon his conscientious dissent and defer[red] to the majority solely for the sake of reaching agreement?" *Pollick*, 448 Mich at 384 (quotation marks and citation omitted). The test for a substantial departure from the standard deadlocked jury instruction cannot and does not rest solely on a "gross difference in language." *People v Hardin*, 421 Mich 296, 314; 365 NW2d 101 (1984).

An optimal supplemental deadlocked jury instruction will "generate discussion towards the resolution of the case but will avoid forcing a decision." *Sullivan*, 392 Mich at 334. However, if the supplemental deadlocked jury instruction "can cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement, then that charge should not be used." *Id*. (quotation marks and citation omitted). Relevant to the inquiry whether a given deadlocked jury instruction is unduly coercive is whether the trial court "required, or threatened to require, the jury to deliberate for an unreasonable length of time or for unreasonable intervals," and whether the given instruction "calls for the jury, as part of its civic duty, to reach a unanimous verdict," and indicates that "failure to reach a verdict constitutes a failure of purpose." *Hardin*, 421 Mich at 316. "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v Kibbe*, 431 US 145, 155; 97 S Ct 1730; 52 L Ed 2d 203 (1977).

In this case, we find no error, let alone any plain error. There is no question that the supplemental instruction was not helpful to the jury. It had a sarcastic tone which has no place in judicial proceedings, and it did not discuss with the jury the jury's duties in light of the questions posed. There was nothing in the instruction calculated to generate discussion toward the resolution of the case. Certainly the trial court would have been well advised to adhere more closely to M Crim JI 3.12.

Nonetheless, the instruction did not affirmatively misstate the law and, under the circumstances, was not unduly coercive. The instruction directed the jurors to continue deliberating, albeit without further direction as to how to do so. It did not directly indicate that the trial court would not accept a hung decision after further deliberations. Further, the trial court's instruction implicitly suggested that if the jury was still deadlocked after three days of deliberation, the trial court would accept a hung verdict. The instruction did not chastise the jury for failing its civic duty by failing to reach a verdict. The jurors continued deliberations for approximately four hours after the instruction was given. That period of deliberation suggests that jurors did not feel compelled to abandon their positions merely to avoid prolonged deliberations, or else one would expect a compelled verdict to have been reached sooner. Nor does the record indicate that the jury was being forced to deliberate for unreasonable intervals before being allowed to take a break. Put simply, while the given instruction was not well-handled by the trial judge, was unhelpful to the jury, and certainly was not an "optimal instruction," it was, for the reasons stated above not unduly coercive, at least under a clear error standard. Because there was no error, we need not further consider whether the other requirements of the plain error standard were met.

## II. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Defendant also claims that his trial attorney was ineffective for failing to object to the allegedly coercive instruction. We disagree.

Claims of ineffective assistance of trial counsel should be raised by moving for a new trial or an evidentiary hearing; otherwise, review of those claims will be limited to mistakes apparent on the record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008); *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). In this case, defendant did neither. Consequently, defendant has failed to create a testimonial record to support his claim. *People v Dixon*, 217 Mich App 400, 408; 552 NW2d 663 (1996). By failing to do so, review of defendant's ineffective assistance claim is foreclosed unless the existing trial court record "contains sufficient detail to support defendant's claim." *Id.*

"The question whether [defendant's trial attorney] performed ineffectively is a mixed question of law and fact." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Questions of constitutional law arising from defendant's claim are reviewed de novo, and findings of fact relating to defendant's claim are reviewed for clear error. *Id.*

Claims of ineffective assistance of trial counsel are evaluated under the standard set forth in *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *People v Hoag*, 460 Mich 1, 5; 594 NW2d 57 (1999); *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994). "In order to obtain a new trial, [a] defendant must show that (1) [trial] counsel's performance fell below an objective standard of reasonableness and (2) but for [trial] counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51.

Under the deficient performance prong, a reviewing court evaluates whether the trial attorney's "acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). In doing so, defendant's trial attorney should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quotation marks and citation omitted). Thus, defendant must overcome a "strong presumption that [trial] counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52.

If defendant's assertion does not fall under one of the narrow circumstances where prejudiced is presumed in ineffective assistance claims, defendant must "affirmatively prove prejudice," by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Vaughn*, 491 Mich at 671 (quotation marks and citation omitted).

Defendant argues that his trial attorney was ineffective because the attorney failed to object to the nonstandard deadlocked jury instruction given to the jurors after they indicated that they were at an impasse and sought instruction. But defendant cannot show how counsel's failure to object to the given deadlocked jury instruction fell below an objective standard of reasonableness. As discussed above, the given deadlocked jury instruction was not unduly

coercive. Consequently, any objection by defendant's trial attorney on that ground would have been futile, and counsel is not ineffective for failing to raise a futile objection regarding a meritless claim. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

### III. THE LATE FEE FOR FAILURE TO TIMELY PAY COSTS

Finally, defendant asserts that the trial court improperly assessed a late fee against him for failure to timely pay costs because the trial court never set a deadline for repayment. We agree.

Defendant was ordered to pay $1,558 in various court costs and other assorted fees. More specifically, defendant was ordered to pay $68 for state minimum costs, $130 for crime victim's fee, $60 DNA assessment fee, and $1,300 in court costs. However, the trial court left the due date for payment of those obligations blank on the judgment of sentence. The judgment of sentence indicated that if the imposed "[f]ines, costs, and fees" were "not paid within 56 days of the due date," defendant would be "subject to a 20% late fee on the amount owed." On November 8, 2016, 57 days after sentencing on September 12, 2016, a 20% late fee, based on the $1,300 in court costs, was assessed against defendant and entered into the lower court register of actions.

Defendant argues that the imposition of the 20% late fee was improper because the trial court left the due date for the penalties, fees, and costs blank on the judgment on sentence; thus, the late fee was unauthorized under MCL 600.4803(1). That is, because MCL 600.4803(1) only authorizes a 20% late fee when a defendant fails to fully pay ordered costs and fees "within 56 days after that amount is due and owing," the late fee was improper because the 56-day period had not yet elapsed given that the condition to trigger the period—a specified date—was absent.

Challenges to the imposition of costs and fees must be raised when the court imposes the fee; otherwise, the claim of error will be unpreserved. See *People v Jackson*, 483 Mich 271, 292 n 18; 769 NW2d 630 (2009). Here, the issue is not preserved because defendant never challenged the imposition of the late fee at the trial court.

This Court reviews the interpretation and application of statutes de novo. *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012). But we review unpreserved claims of error for plain error affecting a defendant's substantial rights. *Carines*, 460 Mich at 763-764.

"Courts may only impose costs in a criminal case when such costs are authorized by statute." *People v Juntikka*, 310 Mich App 306, 310; 871 NW2d 555 (2015), citing *People v Cunningham*, 496 Mich 145, 149; 852 NW2d 118 (2014). "When this Court interprets statutory language, our primary goal is to discern the intent of the Legislature as expressed in the text of the statute." *Grimes v Mich Dep't of Transp*, 475 Mich 72, 76; 715 NW2d 275 (2006). This Court begins this task "by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *Id*. (quotation marks and citation omitted). In so doing, this Court "assign[s] the words

of a statute their plain and ordinary meaning," unless they are defined in the statute or they are otherwise terms of art or technical words. *Id.*

The statute that allows for the imposition of defendant's late fee, MCL 600.4803(1), provides, in pertinent part:

> (1) A person who fails to pay a penalty, fee, or costs in full within 56 days after that amount is due and owing is subject to a late penalty equal to 20% of the amount owed. The court shall inform a person subject to a penalty, fee, or costs that the late penalty will be applied to any amount that continues to be unpaid 56 days after the amount is due and owing. Penalties, fees, and costs are due and owing at the time they are ordered unless the court directs otherwise. The court shall order a specific date on which the penalties, fees, and costs are due and owing. If the court authorizes delayed or installment payments of a penalty, fee, or costs, the court shall inform the person of the date on which, or time schedule under which, the penalty, fee, or costs, or portion of the penalty, fee, or costs, will be due and owing. A late penalty may be waived by the court upon the request of the person subject to the late penalty.

Defendant's judgment of sentence, however, did not assign a "specific date on which the penalties, fees, and costs are due and owing." Instead, it left blank the space provided for a date on the judgment of sentence.

Use of the word "shall" in a statute indicates a mandatory directive. *People v Lockridge*, 498 Mich 358, 387; 870 NW2d 502 (2015). Moreover, a trial court speaks through its written judgments and orders. *People v Mysliwiec*, 315 Mich App 414, 418 n 2; 890 NW2d 691 (2016). Because the statute plainly states that the trial court "shall order a specific date on which the penalties, fees, and costs are due and owing," and the trial court failed to do so, it follows that the 56-day period never elapsed given that there was never a specific date to trigger it. That is, the statute obligates the trial court to speak about a specific due date for penalties, fees, and costs, and its failure to do so was in contravention of the statute. Given that it left a blank due date, the trial court has not sufficiently spoken, as required by the statute, to trigger the 56-day period before a late fee can be imposed. Consequently, the trial court clearly lacked authority to impose the late fee under the statute because the 56-day period had yet to start running.

The plain error also was prejudicial. The imposition of the unauthorized fee adversely affected defendant's substantial rights and correspondingly undermines the fairness, integrity, and public reputation of judicial proceedings, in that defendant was subjected to a significant penalty to which he never should have been exposed, and to which he would not have been exposed had the trial court followed the statutory mandate. He thus has established sufficient prejudice for relief under the plain error rule.

We affirm defendant's underlying conviction and sentence, vacate the late fee imposed against defendant for failure to timely pay costs, and remand for entry of a corrected judgment of sentence specifying a due date for the ordered costs and fees. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Patrick M. Meter
/s/ Jonathan Tukel